**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *EX REL.* STEPHEN M. SHEA<br><br>-and-<br><br>STEPHEN M. SHEA,<br><br>          Plaintiffs,<br><br>          v.<br><br>VERIZON BUSINESS NETWORK SERVICES, INC.; VERIZON FEDERAL INC.; MCI COMMUNICATIONS SERVICES, INC. d/b/a VERIZON BUSINESS SERVICES; and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>          Defendants. | No. 1:09-cv-01050-GK<br><br><br><br>Pretrial Conference:  Not Yet Scheduled<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Randolph D. Moss (D.C. Bar No. 417749)
Jennifer M. O'Connor (D.C. Bar No. 460352)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
randolph.moss@wilmerhale.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................1

I.      THE FIRST-TO-FILE BAR REQUIRES DISMISSAL OF THIS ACTION ....................2

        A.      This Action Is Related To The 2007 Lawsuit ..........................................2

        B.      The First-To-File Bar Applies To Successive Actions By The Same Relator ........5

        C.      This Suit Is Barred Despite The Dismissal Of The 2007 Lawsuit In 2011 ...........10

II.     THE PUBLIC DISCLOSURE BAR REQUIRES DISMISSAL OF THIS ACTION .......12

        A.      The Material Elements Of Relator's Allegations Were Publicly Disclosed ..........12

        B.      Relator Is Not An Original Source ........................................................15

III.    THE SECOND AMENDED COMPLAINT DOES NOT SATISFY RULES 8 & 9(b) ...18

IV.     DISMISSAL SHOULD BE WITH PREJUDICE ............................................25

CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*A-J Marine, Inc. v. Corfu Contractors, Inc.*,
  810 F. Supp. 2d 168 (D.D.C. 2011) ....................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................24

*Bailey v. Shell Western E & P Inc.*,
  609 F.3d 710 (5th Cir. 2010) .......................................................................7, 8, 9

*BedRoc Ltd., LLC v. U.S.*,
  541 U.S. 176 (2004) ...........................................................................................5

*Boone v. MountainMade Foundation*,
  684 F. Supp. 2d 1 (D.D.C. 2010) .....................................................................19

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ............................................................................23

*Grupo Dataflux v. Atlas Global Group, L.P.*,
  541 U.S. 567 (2004) ..........................................................................................11

*Grynberg v. Koch Gateway Pipeline Co.*,
  390 F.3d 1276 (10th Cir. 2004) ...........................................................................7

*Her v. Regions Financial Corp.*, Nos. 07-2017, 06-2178, 06-2153,
  2008 WL 5381321 (W.D. Ark. Dec. 22, 2008) ...................................................6

*Hunt Construction Group, Inc. v. National Wrecking Corp.*,
  542 F. Supp. 2d 87 (D.D.C. 2008) .....................................................................11

*In re Natural Gas Royalties Qui Tam Litigation (CO2 Appeals)*,
  566 F.3d 956 (10th Cir. 2009) ........................................................................3, 4

*In re Pharmaceutical Industries Average Wholesale Price Litigation*,
  498 F. Supp. 2d 389 (D. Mass. 2007) .................................................................6

*Kennard v. Comstock Resources, Inc.*,
  363 F.3d 1039 (10th Cir. 2004) .....................................................................16, 17

*Klein v. Toupin*, No. 05-647,
  2006 WL 997959 (D.D.C. Apr. 14, 2006) .........................................................25

*Kowal v. MCI Communications Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) .......................................................................19, 20, 22

*Morongo Band of Mission Indians v. California State Board of Equalization*,
   858 F.2d 1376 (9th Cir. 1988) ......................................................................................11

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ...................................................................................19

*Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*,
   421 F. Supp. 2d 87 (D.D.C. 2006) ..............................................................................11

*U.S. ex rel. Bane v. LifeCare Diagnostics*, No. 8:06-cv-467,
   2008 WL 4853599 (M.D. Fla. Nov. 10, 2008) ............................................................6

*U.S. ex rel. Bane v. Lincare Holdings, Inc.*,
   No. 8:06-cv-467 (M.D. Fla. Mar. 14, 2008) .............................................................5, 6

*U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.*,
   251 F. Supp. 2d 28 (D.D.C. 2003) ..............................................................................24

*U.S. ex rel. Batiste v. SLM Corp.*,
   659 F.3d 1204 (D.C. Cir. 2011) ...............................................................2, 3, 4, 6, 12

*U.S. ex rel. Batiste v. SLM Corp.*,
   740 F. Supp. 2d 98 (D.D.C. 2010) ..............................................................................20

*U.S. ex rel. Bender v. North American Telecommunications, Inc.*,
   686 F. Supp. 2d 46 (D.D.C. 2010) ..............................................................................24

*U.S. ex rel. Bledsoe v. Cmty. Health Systems*,
   501 F.3d 493 (6th Cir. 2007) ......................................................................................22

*U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Insurance Co.*,
   782 F. Supp. 2d 248 (E.D. La. 2011) .....................................................................10, 11

*U.S. ex rel. Branch Consultants v. Allstate Insurance Co.*,
   560 F.3d 371 (5th Cir. 2009) .....................................................................................4, 9

*U.S. ex rel. Carter v. Halliburton Co.*, No. 1:10CV864,
   2011 WL 2118227 (E.D. Va. May 24, 2011) ..............................................................6

*U.S. ex rel. Clausen v. Laboratory Corp. of America*,
   290 F.3d 1301 (11th Cir. 2002) .............................................................................20, 23

iii

*U.S. ex rel. Davis v. District of Columbia*,
    591 F. Supp. 2d 30 (D.D.C. 2008) ......................................................................11

*U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Services, Inc.*,
    778 F. Supp. 2d 37 (D.D.C. 2011) ................................................................22, 24

*U.S. ex rel. Eisenstein v. City of New York*,
    556 U.S. 928 (2009) ..........................................................................................23

*U.S. ex rel. Estate of Cunningham v. Millennium Laboratories of California*,
    841 F. Supp. 2d 523 (D. Mass. 2012) ...............................................................17

*U.S. ex rel. Feingold v. AdminaStar Federal, Inc.*,
    324 F.3d 492 (7th Cir. 2003) .............................................................................16

*U.S. ex rel. Findley v. FPC-Boron Employees' Club*,
    105 F.3d 675 (D.C. Cir. 1997) ...........................................................................16

*\*U.S. ex rel. Folliard v. CDW Technology Services, Inc.*,
    722 F. Supp. 2d 37 (D.D.C. 2010) ...................................................................3, 5

*\*U.S. ex rel. Folliard v. Synnex Corp.*,
    798 F. Supp. 2d 66 (D.D.C. 2011) ..........................................................3, 21, 24

*U.S. ex rel. Grynberg v. Alabama Pipeline Co.*, No. Civ. 95-725,
    1997 WL 33763820 (D.D.C. Mar. 27, 1997) ....................................................21

*\*U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
    318 F.3d 214 (D.C. Cir. 2003) ....................................................................2, 3, 4

*U.S. ex rel. Head v. Kane Co.*,
    798 F. Supp. 2d 186 (D.D.C. 2011) .......................................................19, 21, 22

*U.S. ex rel. Jamison v. McKesson Corp.*,
    649 F.3d 322 (5th Cir. 2011) .............................................................................11

*U.S. ex rel. Joseph v. Cannon*,
    642 F.2d 1373 (D.C. Cir. 1981) ...................................................................19, 21

*U.S. ex rel. Joshi v. St. Luke's Hosp. Inc.*,
    441 F.3d 552 (8th Cir. 2006) .........................................................................21, 23

*\*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004) ..............................................................................22

*U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.*,
   985 F.2d 1148 (2d Cir. 1993) .................................................................................16

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.*,
   149 F.3d 227 (3d Cir. 1998) ....................................................................................6

*U.S. ex rel. LaCorte v. Wagner*,
   185 F.3d 188 (4th Cir. 1999) ...................................................................................6

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*
   162 F.3d 1027 (9th Cir. 1998) ...............................................................................17

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*,
   243 F.3d 1181 (9th Cir. 2001) ...............................................................................25

*U.S. ex rel. Lusby v. Rolls-Royce Corp.*,
   570 F.3d 849 (7th Cir. 2009) .................................................................................25

*U.S. ex rel. Mailly v. HealthSouth Holdings, Inc.*, Nos. 07-2981, 09-483,
   2010 WL 149830 (D.N.J. Jan. 15, 2010) .................................................................6

*U.S. ex rel. Ortega v. Columbia Healthcare*,
   240 F. Supp. 2d 8 (D.D.C. 2003) ..........................................................4, 11, 19, 20

*U.S. ex rel. Poteet v. Bahler Medical, Inc.*,
   619 F.3d 104 (1st Cir. 2010) .................................................................................25

*U.S. ex rel. Powell v. American InterContinental University, Inc.*, No. 1:08-CV-2277,
   2012 WL 2885356 (N.D. Ga. July 12, 2012) ..........................................................25

*U.S. ex. rel. Precision Co. v. Koch Industries*,
   31 F.3d 1015 (10th Cir. 1994) ............................................................................9, 10

*U.S. ex rel. Reagan v. E. Texas Medical Ctr. Reg'l Healthcare Systems*,
   384 F.3d 168 (5th Cir. 2004) .................................................................................16

*U.S. ex rel. Russell v. Epic Healthcare Management Group*,
   193 F.3d 304 (5th Cir. 1999) .................................................................................23

*U.S. ex rel. Sandager v. Dell Marketing, L.P.*, No. 08-4805,
   2012 WL 1453610 (D. Minn. April 26, 2012) ........................................................10

*\*U.S. ex rel. Smith v. Yale-New Haven Hospital, Inc.*,
   411 F. Supp. 2d 64 (D. Conn. 2005) ....................................................................5, 7

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn,*
14 F.3d 645 (D.C. Cir. 1994) ............................................................13, 14, 15, 16

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante P.A. v. Prudential Insurance Co.,*
944 F.2d 1149 (3d Cir. 1991)...................................................................................16

*U.S. ex rel. Taxpayers Against Fraud v. GE,*
41 F.3d 1032 (6th Cir. 1994) ....................................................................................7

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,*
125 F.3d 899 (5th Cir. 1997) ...................................................................................19

*U.S. ex rel. Totten v. Bombardier Corp.,*
286 F.3d 542 (D.C. Cir. 2002) .................................................................................19

*U.S. ex rel. Westrick v. Second Chance Body Armor,*
685 F. Supp. 2d 129 (D.D.C. 2010) .........................................................................24

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.,*
389 F.3d 1251 (D.C. Cir. 2004) ..............................................................19, 20, 22, 24

*U.S. v. First Choice Armor & Equipment, Inc.,*
808 F. Supp. 2d 68 (D.D.C. 2011) ...........................................................................21

*U.S. v. Kellogg Brown & Root Services, Inc.,*
800 F. Supp. 2d 143 (D.D.C. 2011) .........................................................................19

*U.S. v. Kinder Morgan CO2 Co., L.P.,* No. 04-CV-00716,
2005 WL 3157998 (D. Colo. Nov. 21, 2005) ...........................................................8

*Walburn v. Lockheed Martin Corp.,*
431 F.3d 966 (6th Cir. 2005) ....................................................................................7

**STATUTES**

31 U.S.C. § 3730(b)(2) .................................................................................................7

31 U.S.C. § 3730(b)(5) ..........................................................................2, 5, 6, 9, 10, 11

31 U.S.C. § 3730(e)(4)(B) ...........................................................................................11

**RULES**

Federal Rule of Civil Procedure 8 ...............................................................................1, 9, 18, 19

Federal Rule of Civil Procedure 9(b) ................................................................................ passim

Federal Rule of Civil Procedure 24 ...............................................................................................9

**OTHER**

John T. Boese, *Civil False Claims and Qui Tam Actions* (4th ed., CCH through 2012)

    § 4.03[C][2][a][iv] ...........................................................................................................10

    § 4.03[C][2][b]..........................................................................................................1, 25

    * Authorities upon which we chiefly rely

**INTRODUCTION**

Relator's opposition brief confirms that this is not a proper *qui tam* action under the False

Claims Act ("FCA").  The FCA's *qui tam* provisions are meant to encourage and reward

whistleblowers—private citizens in possession of non-public information regarding false claims

submitted to the United States.  But the Act limits the circumstances in which a private party is

permitted to step into the shoes of the United States and recover rewards from the public fisc.

Relator brought—and was rewarded for—a prior FCA case alleging that Verizon improperly

billed non-allowable surcharges under two related government contracts.  Prior to filing that

case, Relator appears to have reviewed the relevant contracts and learned what surcharges

Verizon was billing under them through a 2004 MCI document related specifically to those

contracts.  In this case, Relator is just guessing.  In his deposition, Relator admitted that he has

not read most of the contracts at issue and has reviewed only "chunks" of others.  *See, e.g.*, Shea

Dep. 117:1-3 ("I have not read every single one of these contracts in their entirety because I

don't have them."); *id.* at 28:12-14, 18-20; 34:4-5; 40:20-21; 51:5-6; 100:20-21; 104:7-8;

106:18-19.  In his opposition brief, Relator concedes (at 41) that he "cannot allege with certainty

whether any particular contracts at issue permitted the Non-Allowable Tax-Like Surcharges."

Lacking any actual information—but hypothesizing that Verizon might be improperly

billing certain surcharges under additional government contracts—Relator simply found the

names of 20 contracts on the Internet and filed this action based on his claims in the prior

litigation, these additional contracts, and other information he found on the Internet.  The FCA's

first-to-file and public disclosure bars forbid this.  It is also no surprise that, in these

circumstances, Relator is unable to plead fraud with particularity under Federal Rule of Civil

Procedure 9(b) or even to meet the general pleading requirements of Rule 8.

# I.     THE FIRST-TO-FILE BAR REQUIRES DISMISSAL OF THIS ACTION

## A.     This Action Is Related To The 2007 Lawsuit

The first-to-file bar precludes a person other than the Government from bringing a

subsequent FCA action that is "related" to a prior action.  31 U.S.C. § 3730(b)(5).  Here, Relator

provides no basis to refute his own repeated representations that this case is "related" to his 2007

Lawsuit.  *See* 2009 Compl. ¶ 7 (Dkt. No. 1) ("In 2007, Relator Stephen Shea filed a related

action, Civ. Action No. 07CV0111 (GK) …."); *see also* Defs. Mem. 7, 16.  Relator does not and

cannot dispute that both actions allege a scheme by Verizon to bill the Government for non-

allowable surcharges on telecommunications contracts.  *See* Defs. Mem. 15 (chart, "Type of

Fraud" and "Specific Allegations").  Nor does Relator contest that both actions allege that

(1) Verizon was prohibited from charging the surcharges at issue under the Federal Acquisition

Regulations ("FAR"), *see id.* at 16 (chart, "Legal Arguments"); (2) Relator discovered his

allegations through consulting work for commercial telecommunications customers who Verizon

purportedly billed for the surcharges at issue, *see id.* (chart, "Circumstances of Discovery");

(3) Relator received an MCI document indicating that Verizon was charging the Government for

certain surcharges, *see id.* (chart, "Specific Source of Knowledge"); and (4) Verizon purportedly

did not have a separate billing system for federal customers and commercial customers, and that

it was difficult or impossible for Verizon's billing system to turn off the surcharges for

government customers, *see id.* (chart, "Allegations About Verizon's General Billing Practices").

Relator's two actions are thus much more closely "related" than the actions deemed

related by the D.C. Circuit in *U.S. ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204 (D.C. Cir. 2011),

which involved allegations of different kinds of fraudulent forbearance practices.  *See* Defs.

Mem. 17-18.  And, Relator's actions here are at least as closely related as the ones in *U.S. ex rel.*

*Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003), involving

different subsidiaries, which the Court also found sufficiently related for the bar to apply. *See* 318 F.3d at 218-19; Defs. Mem. 18.

Although Relator contends (at 19) that his two suits are not "related" because they involve different contracts with different agencies,[1] he nonetheless acknowledges that two decisions of this Court have held that "complaints which allege similar fraudulent schemes on different contracts with different federal agencies do not materially differ under the first-to-file rule." Opp. 20 (citing *U.S. ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 73 (D.D.C. 2011) (fact that new case involved false claims to "different agencies under different contracts" immaterial); *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 37, 41 (D.D.C. 2010) ("*CDW II*") (rejecting the argument that case was distinguishable from a prior action because it involved "'completely different contracts and completely different agencies'")).[2]

Relying on *In re Natural Gas Royalties Qui Tam Litigation* (*CO2 Appeals*), 566 F.3d 956 (10th Cir. 2009), Relator argues (at 20) that this Court's prior decisions "incorrectly applied a notice-based standard to the first-to-file bar." But that is precisely the standard that applies in this Circuit. In *Batiste*, the D.C. Circuit embraced the same notice-based approach that Relator contends this Court incorrectly applied in *Synnex* and *CDW II*:

> In other words, we must determine whether the [second c]omplaint alleges a fraudulent scheme the government already would be *equipped to investigate* based on the [first c]omplaint. . . . [A]lthough the complaints allege somewhat different facts, [the first] complaint suffices to put the U.S. government *on notice* of allegedly fraudulent . . . practices . . . , and [the second] complaint alleges the same material elements of the same fraud.

---

[1] Relator argues that six agencies that were signatories to contracts involved in the present case were not signatories to the contracts in the 2007 Lawsuit. Notably, however, Relator does not contend that those agencies did not procure services (and pay surcharges) under the GSA FTS2001 and FTS2001 Bridge contracts at issue in the 2007 Lawsuit.

[2] Relator also notes that one type of surcharge at issue here was not involved in the 2007 Lawsuit, but Relator provides no support for concluding that this minor difference is material.

*Batiste*, 659 F.3d at 1209 (emphasis added).[3]

Relator suggests (at 23) that a notice-based approach "undermines the FCA's goals," because it would mean that his 2007 Lawsuit could preclude an action by a "Verizon insider, with direct knowledge that Verizon was illegally charging the United States prohibited surcharges under other telecommunications contracts."  But if any such relator were to bring forward genuinely new information—information of which the Government was not already on notice—then the notice-based approach would by definition present no obstacle.  The bar precludes suit only when the material elements of the alleged fraud are sufficiently similar to put the Government on notice to initiate whatever investigation it deems appropriate.  The first-to-file rule thus "furthers the [FCA's] twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own."  *Batiste*, 659 F.3d at 1208 (internal quotation marks omitted).

Finally, citing *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371 (5th Cir. 2009), Relator argues (at 23-24) that if naming different defendants in a subsequent suit is a material difference, "then alleging that the same defendant committed a similar fraud on different contracts with different federal agencies is also a material difference."  But that is incorrect.  The Government is far more likely to initiate an investigation of whether the same defendant might have engaged in the same conduct under multiple contracts than it is to investigate whether *unrelated* defendants (such as those at issue in both *Branch* and *Natural Gas Royalties*[4]) engaged in that same conduct.  Relator's prior submissions confirm this point:  In seeking a share of the

---

[3] Relator suggests (at 18) that his two actions are unrelated because they "give rise to different investigations and different recoveries."  But the Court in *Batiste* explained that an examination of possible recovery merely "'aids in the determination of whether the later-filed complaint alleges a different type of wrongdoing on new and different material facts.'"  659 F.3d at 1210 (quoting *U.S. ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 13 (D.D.C. 2003)).

[4] Relator concedes (at 21 n.17) that the D.C. Circuit has held that "merely adding on subsidiaries [as defendants] [i]s not a material difference."  *See Hampton*, 318 F.3d at 218-19.

4

recovery in the 2007 Lawsuit, Relator argued that the suit enabled the Government to conduct its own investigation of additional contracts.  Defs. Mem. 19.[5]

### B.    The First-To-File Bar Applies To Successive Actions By The Same Relator

Relator's contention that the first-to-file bar does not apply to actions by the same relator is equally flawed.  Statutory interpretation "begins with the statutory text, and ends there as well if the text is unambiguous," as it is here.  *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) (plurality).  Section 3730(b)(5) states:  "When a person brings an action under this subsection, *no person other than the Government* may intervene or bring a related action based on the facts underlying the pending action."  (Emphasis added.)  Because Relator is not the Government, the first-to-file bar applies.

The case law supports this plain reading of the unambiguous statutory text.  The most exhaustive analysis appears in *U.S. ex rel. Smith v. Yale-New Haven Hospital, Inc.*, 411 F. Supp. 2d 64 (D. Conn. 2005), *aff'd on reconsideration*, 2006 WL 387297 (D. Conn. 2006).  The relator in *Smith* had filed a previous *qui tam* action raising "almost identical . . . allegations."  *Id.* at 76. Considering "whether [§ 3730(b)(5)] should apply to two cases involving the same plaintiff-relator," the court held that "the plain language of the statute" dictated an affirmative answer:

> If a qui tam action has been brought, no one other than the Government may intervene or bring another related action.  The statute does not say "no *other* person except the Government may bring an action," it simply says "no person" which would apply equally to the original relator as any other person.

*Id.* at 74-75 (emphasis added).

Similarly, in *U.S. ex rel. Bane v. Lincare Holdings, Inc.*, No. 8:06-cv-467 (M.D. Fla. Mar. 14, 2008) (attached as Ex. A), the court rejected exactly the argument that Relator makes

---

[5] Relator notes (at 24-25) that the Government made an argument similar to his in *CDW*.  If anything, however, that weighs against the argument here:  It has been considered and rejected.

here, finding not a single "case in which a relator was allowed to proceed in a second cause of action brought under the FCA against a defendant based on the same fraudulent scheme that formed the basis for claims against that defendant."  *Id.* at 7; *see also U.S. ex rel. Bane v. LifeCare Diagnostics*, No. 8:06-cv-467, 2008 WL 4853599, at *4 (M.D. Fla. Nov. 10, 2008) (applying § 3730(b)(5) to successive suit by same relator).  In *U.S. ex rel. Carter v. Halliburton Co.*, No. 1:10CV864, 2011 WL 2118227, at *4 (E.D. Va. May 24, 2011), the court also applied the first-to-file bar to a second suit by the same relator, noting that the court was bound to apply the plain terms of the statute.  Finally, in *U.S. ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999), the Fourth Circuit likewise held that the plain meaning of the "no person other than the Government" language of § 3730(b)(5) was controlling in an action involving attempted intervention in an FCA case:  "The application of section 3730(b)(5) to this case is straight forward.  Wagner and Dehner are persons other than the government.  Therefore, the statute on its face precludes them from intervening in this action."[6]

Application of the first-to-file bar to successive claims by the same relator also serves Congress's purpose.  As noted, the "first-to-file rule . . . furthers the statute's 'twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own.'"  *Batiste*, 659 F.3d at 1208.  "[O]nce the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds."  *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998).  This purpose is served by barring any subsequent related *qui tam*

---

[6] *See also Her v. Regions Financial Corp.*, Nos. 07-2017, 06-2178, 06-2153, 2008 WL 5381321 (W.D. Ark. Dec. 22, 2008) (applying § 3730(b)(5) to dismiss an action brought by two of the relators who had filed the prior action, *U.S. ex rel. Tou Yang Lee v. Chambers Bank*, No. 06-cv-02134-RTD (W.D. Ark. July 20, 2006)); *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 400 (D. Mass. 2007) (assuming in *dicta* that bar applied to cases by same relator); *U.S. ex rel. Mailly v. HealthSouth Holdings, Inc.*, Nos. 07-2981, 09-483, 2010 WL 149830, at *1, *4 (D.N.J. Jan. 15, 2010) (same).

action—whether brought by the same or a different relator.

   If anything, the FCA suggests that the first-to-file bar should apply with even greater force when the same relator brings successive actions.  The statute strikes a bargain:  In exchange for a share of any recovery, the relator must hand over to the Government—as soon as he files his complaint—"substantially *all* material evidence and information" in his possession. 31 U.S.C. § 3730(b)(2) (emphasis added).  It is only fair to enforce that bargain by demanding that the relator "come[] forward with all the information he or she has in the first suit, rather than file piecemeal lawsuits."  *Smith*, 411 F. Supp. 2d at 75.  A relator who seeks a bounty in a second case, while providing only information that he knew or could reasonably have known at the time of his initial complaint, is not holding up his end of the deal and is in violation of § 3730(b)(2). Relator's argument ignores this bargain, and, indeed, would permit him to bring yet a third or fourth case based on nothing more than additional contracts he finds on the Internet, each time returning to Court making the same allegations asserted in the 2007 Lawsuit.[7]

   The authorities cited by Relator are not to the contrary.  Neither *U.S. ex rel. Taxpayers Against Fraud v. GE*, 41 F.3d 1032 (6th Cir. 1994), nor *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005), even purported to address the issue presented here.  In both cases, the court was simply summarizing the *qui tam* provisions and various bars to recovery.  Neither case had anything to do with the issue presented here.

   The decision in *Bailey v. Shell Western E & P Inc.*, 609 F.3d 710 (5th Cir. 2010), is equally unavailing.  Relator argues in a footnote (at 10, n.11) that the *Bailey* decision is not a "mere procedural exception" to the first-to-file bar.  But the procedural posture of that case is

---

[7] *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004) ("Once an initial qui tam complaint puts the government and the defendants on notice of its essential claim, all interested parties can expect to resolve that claim in a single lawsuit.").

precisely what drove the decision.  The same relators brought *qui tam* claims in the federal

District of Colorado, then filed "virtual[ly] identi[cal]" counterclaims in long-running and

earlier-filed Texas state litigation in order to remove that litigation to federal court.  *U.S. v.*

*Kinder Morgan CO2 Co.*, No. 04-CV-00716, 2005 WL 3157998, at *1-*3 (D. Colo. Nov. 21,

2005).[8]  The Colorado district court transferred its case to Texas over the relators' protest that the

Texas court lacked jurisdiction under the first-to-file bar.  The cases were consolidated before the

Texas court, which entered summary judgment for the defendant.  On appeal, the Fifth Circuit

rejected the relators' argument that the case should have proceeded in Colorado because the

Texas court lacked jurisdiction over relators' counterclaims, holding that "the first-to-file bar

does not apply when the same plaintiff, for whatever reason, files the same claim in a different

jurisdiction."  609 F.3d at 720 (internal quotation marks omitted).

The court in *Bailey* thus permitted the relators to pursue only *one* FCA action, unlike

what Relator seeks to do here.  The issue in *Bailey* was not whether it was permissible to bring

serial FCA claims but whether the relators should be permitted to engage in the gamesmanship

of alleging an FCA claim as a basis for removing a case to federal court and then objecting when

forced to litigate that claim in that federal court.  *See* 609 F.3d at 721 n.3 ("Plaintiffs' attempts at

forum shopping constitute the opportunistic and parasitic behavior that the FCA seeks to

preclude.").  As the Fifth Circuit explained, the "goals of § 3730(b) are to encourage

whistleblowing and to discourage opportunistic behavior."  *Id.* at 721.  Those policy concerns

*support* dismissal here.  Relator was under an obligation to bring all of his relevant information

to the Government's attention when he filed his original case, he was well rewarded for doing so,

---

[8] Relator incorrectly asserts (at 10, n.11) that the Texas case began after the Colorado litigation
and that the *Bailey* relators filed counterclaims in the Texas case after removing it, rather than as
a basis for removal.  *Compare* Opp. 9-10 *with Bailey*, 609 F.3d at 717.

and any follow-on litigation based on the same underlying information must be brought by the Government—not Relator.

Relator incorrectly argues that *Bailey* built on a prior Fifth Circuit decision holding that "'[i]t would be reasonable to read the statute as prohibiting the same claim being made by a different party rather than the same party as is the case here.'"  Opp. 10 n.11 (citing *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009)).  In fact, the quoted language does not come from *Branch*, but from the district court decision that transferred the claims at issue in *Bailey* from Colorado to Texas.  *See Kinder Morgan CO2 Co.*, 2005 WL 3157998, at *2.  Accordingly, the case that Relator actually quotes involved exactly the same concerns about gamesmanship and venue shopping at issue in *Bailey*.  In contrast, the *Branch* case did not involve a successive action by the same relator and certainly did not articulate "well-reasoned policy grounds" (Opp. 10 n.11) for permitting the same relator to bring successive cases based on the same material elements of alleged fraud.

Relator's position also finds no support in *U.S. ex. rel. Precision Co. v. Koch Industries*, 31 F.3d 1015 (10th Cir. 1994).  The question before the court there was whether § 3730(b)(5)'s intervention bar prevents the "joinder" of closely related parties in an amended complaint under Federal Rule of Civil Procedure 15 or forbids only "*intervention*" by unrelated parties under Rule 24.  Applying the unambiguous language of the statute, the court adopted the latter view:

> We believe the focal point for proper analysis is the word "intervene" contained in § 3730(b)(5).  Is that word to be interpreted in its narrow, Fed. R. Civ. P. 24 plain legal meaning, or should it be granted greater breadth, as defendants suggest, to include any form of joinder?  Our judgment tells us the statute implies intervention of the types set forth in Rule 24(b)(2), and the addition of parties does not constitute intervention.

*Id.* at 1017.  The case did not address whether the same relator could bring successive suits, but whether a bar on "interven[ing]" should extend to "joinder."  Not surprisingly, the court held that

the bar, by its plain terms, extends only to intervention.  It was in this context that the court said § 3730(b)(5) "prohibit[s] parties unrelated to the original plaintiff from joining the suit to assert a claim based on the same facts relied upon by the original plaintiff."  *Id.* at 1017-18.[9]

### C.     This Suit Is Barred Despite The Dismissal Of The 2007 Lawsuit In 2011

Relator's argument that the first-to-file bar does not apply here because the 2007 Lawsuit was not "pending" at the time Relator filed his Second Amended Complaint ("SAC") also fails. The bar applies because the 2007 Lawsuit was pending when Relator brought this action.

The language of § 3730(b)(5) makes clear that the relevant inquiry turns on when a successive action is initially commenced, not when a complaint is amended.  It provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or *bring a related action* based on the facts underlying the pending action." (Emphasis added.)  There is a vast difference between amending a complaint in an existing action and "bring[ing] a[n] . . . action."  One brings an action by commencing a lawsuit with the filing of an initial complaint.  *See* Black's Law Dictionary (9th ed. 2009) (defining "bring an action" as "[t]o sue" or "*institute* legal proceedings" (emphasis added)).  As one district court has squarely held, "[t]he use of the term 'action' in" § 3730(b)(5) "indicates that the Court should look to the jurisdictional facts that existed at the time the action was filed, as opposed to facts that existed when the relator later filed an amended complaint."  *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 782 F. Supp. 2d 248, 259 (E.D. La. 2011); *see also U.S. ex rel. Sandager v. Dell Mktg., L.P.*, No. 08-4805, 2012 WL 1453610, at *6 (D. Minn. April 26, 2012) ("[T]hree previously filed actions . . . were pending at the time Sandager filed his original

---

[9] Relator also cites (at 12) the Boese treatise.  But the quoted language simply describes the holding of *Precision Co.*, which affords Relator no support because it is about whether the intervention prong of the first-to-file bar extends to joinder.  *See* John T. Boese, *Civil False Claims and Qui Tam Actions* § 4.03[C][2][a][iv] (4th ed., CCH through 2012).

Complaint, which is the operative complaint for [this] purpose[].").[10]

A bedrock principle of federal jurisdiction also dictates this rule:  "[T]he jurisdiction of the court depends upon the state of things at the time of the action brought."  *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) (internal quotation marks omitted).  Under this "longstanding rule," the "amendment process cannot be used to create jurisdiction retroactively where it did not previously exist."  *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 328 (5th Cir. 2011) (internal quotation marks omitted).  If a relator's "complaint did not establish jurisdiction," "his amendments cannot save it."  *Id.*; *see Morongo Band of Mission Indians v. Cal. St. Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).[11]

*U.S. ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8 (D.D.C. 2003), is entirely consistent with these principles.  In *Ortega*, the relator had filed a *qui tam* action in 1995 and then amended it in 1997 to allege a kickback scheme distinct from the misconduct alleged in the original complaint.  *Id.* at 11.  There was no dispute about the court's jurisdiction over the original complaint.  Rather, the defendant moved to dismiss the amended *kickback* claim under the first-to-file bar.  *Id.*  The relator argued that her amended complaint should relate back to her original complaint, such that she would have priority in asserting the kickback claim even though others had brought it first.  The court sensibly disagreed, holding that "it is clearly outside the intent and purpose of § 3730(b)(5) to permit relation back" in these circumstances.  *Id.* at 14.

---

[10] As the district court noted in *Branch*, "the pre-filing disclosure requirement of § 3730(e)(4)(B) could not function if a court could acquire jurisdiction over a qui tam complaint through amendment. . . .  [A] relator could neglect to inform the government of the information upon which the allegations are based before filing his or her action," then "provide that information to the government at a later time" and "amend the complaint, even in a trivial fashion, to ensure jurisdiction."  782 F. Supp. 2d at 263.

[11] *See also A-J Marine, Inc. v. Corfu Contractors, Inc.*, 810 F. Supp. 2d 168, 174 (D.D.C. 2011); *U.S. ex rel. Davis v. District of Columbia*, 591 F. Supp. 2d 30, 35-36 (D.D.C. 2008); *Hunt Const. Group, Inc. v. National Wrecking Corp.*, 542 F. Supp. 2d 87, 90 (D.D.C. 2008); *Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 95 (D.D.C. 2006).

The court did not address the question presented here—whether a party "brings an action" by amending a previously filed complaint.[12]

Relator argues (at 16-17) that he should be permitted to proceed with his SAC because the first-to-file bar should be construed to permit him to file an entirely new action. But even if the bar permitted an entirely new action (which it does not, *see infra* p. 25 & n.22), that would provide no basis for permitting the SAC to proceed. Relator cites no authority for the remarkable proposition that a court can permit an amended complaint to proceed where the first-to-file bar precludes the initial complaint. Whether or not Relator could pursue a new action, he cannot proceed in this case.[13]

## II.     THE PUBLIC DISCLOSURE BAR REQUIRES DISMISSAL OF THIS ACTION

### A.     The Material Elements Of Relator's Allegations Were Publicly Disclosed

The SAC also must be dismissed under the public disclosure bar because the material elements of Relator's allegations were disclosed on the Internet before he filed suit. Relator alleges that Verizon billed taxes and surcharges to the Government that were not permissible under the language of Verizon's contracts with the Government. *See* SAC ¶ 28. Verizon explained in its opening brief (at 22) that these allegations are comprised of two material elements: (1) that 20 contracts between Verizon and various government entities allegedly disallowed certain surcharges, and (2) that Verizon allegedly invoiced the Government for these surcharges. Defendants then demonstrated that, to the extent Relator has non-speculative

---

[12] Relator argues (at 15-16 & n.15) that Defendants should have focused on a paragraph of the D.C. Circuit's decision in *Batiste*. But as Relator acknowledges, *Batiste* did not "expressly decide" whether the amendment of a complaint after the dismissal of a first-filed action could establish jurisdiction; the relator in *Batiste* had waived that argument. 659 F.3d at 1208.

[13] There are, of course, real differences between proceeding on an existing complaint and having to file a new complaint. For example, the reach of the statute of limitations would differ and public disclosures made before the filing of the new action could foreclose that suit.

information about these material elements, he found it on the Internet.  *See id.* at 23-25.  Relator

does not contest that publication on the Internet triggers the bar, and he has no real response to

these showings.[14]

Relator does not respond to Defendants' showing that the purported invoice content on

which he relied ("mock ups" of invoices for some contracts, *see* Defs. Mem. 25) was publicly

available on the Internet.  Nor does Relator dispute that he found the contractual language upon

which he relies on the Internet.  His only response is the puzzling contention that the contracts he

found on the Internet did not publicly disclose the "true state of facts" because their wording is

allegedly "confusing."  Opp. 28 (quoting SAC ¶¶ 32 & 41).  But Relator fails to explain how the

contract terms themselves do not reveal the "true state of facts," when it is the actual terms of the

contracts that govern which taxes and surcharges are allowable.  Indeed, Relator himself

contends (at 38) that all one needs to do to determine whether fraud allegedly occurred is to

compare the contracts to the invoices.[15]  Nor does Relator explain how contractual language

agreed upon by both Verizon and the Government could "deceive" the Government.  It is thus

clear that any material information in Relator's possession regarding the essential elements of his

claims was publicly disclosed.

Relator's efforts to identify some non-public information that he brings to this case

merely reinforces that conclusion.  He says that he "learned about Verizon's [allegedly]

---

[14] Relator argues (at 27) that Defendants misstated the law by failing to recognize that either allegations of fraud or the essential elements of the fraud must have been publicly disclosed, not just some "information" about the fraud.  But Defendants argued that the "material elements" or "essential elements" of Relator's fraud claims had been disclosed.  *See* Defs. Mem. 2, 22, 26, 27 ("where the material elements of an allegation have been publicly disclosed, the case is barred" (citing *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994))).

[15] In any event, Relator's SAC alleges only that two of the twenty contracts at issue were confusing.  *See* SAC ¶¶ 30 (WITS 3 Contract), 32-41 (Verizon Wireless Federal Supply Schedule).  And the SAC itself indicates that the alleged misstatements in those contracts could be discerned, for example, by consulting provisions of the U.S. Code (*see* ¶ 30) or simply by reading the entire text of the provision at issue (*see* ¶¶ 32-39).

fraudulent billing practices through his consulting business with large *commercial* customers," Opp. 29 (emphasis added), but he admitted in deposition that he did not work on *federal government contracts* as a consultant and that whatever conversations he had as a consultant with Verizon employees about their billing systems were on behalf of his *commercial* customers, *see* Shea Dep. 16:3-22; 218:18-221:1.[16]  He says (at 30) that he learned "that Verizon used the same tax module for commercial and government contracts," but he admitted that Verizon has a variety of billing systems and he does not know whether his information about the billing systems applied to any particular contract, let alone those at issue in this case.  *See* Shea Dep. 195:9-14; 199:7-202:6; 213:18-214:12; 216:3-8.  And he says (at 30) that he confirmed "his suspicions by reviewing an inside MCI document indicating that MCI" charged the United States for certain surcharges, but he admitted that this document was *specifically related to MCI's FTS contract*—which was the subject of his first *qui tam* suit, but is not at issue in this case.  Shea Dep. 66:4-7 ("I believe it was related to the FTS contracts"); 70:2-7 (same); 84:14-18 (same).

Relator is thus entirely unlike the relator in *Springfield Terminal Railway Co*. who alleged that an arbitrator he had hired to mediate a dispute overbilled the Government for his services.  *See* 14 F.3d at 647.  Although the arbitrator's billing records had been publicly disclosed, the days the arbitrator actually worked had not.  The relator knew these non-public facts "[b]ased upon its own involvement in the arbitration," and thus the case was allowed to proceed.  *Id*. at 648.

---

[16] Relator claims (at 6) that his consulting experience made him "so familiar with Verizon's billing practices" that Verizon asked his company "to train Verizon employees."  But the portion of the deposition that he cites reveals that Relator was in fact being asked to train Verizon's "sales force" on how to more effectively respond to contract solicitations or "RFPs [Requests for Proposal]"—not Verizon's billing systems or how it invoices customers.  Shea Dep. 17:20-21.

In short, Relator's purportedly non-public information bears no nexus to the actual allegations in the SAC and merely supports his speculation that the basis for Relator's original FCA case might extend to 20 additional contracts he located on the Internet.  But, as Relator must concede, his only actual information about those 20 contracts and the relevant billing under those contracts came from entirely public sources.  To the extent his speculation that Verizon might have billed for certain surcharges was confirmed, as he suggests, by publicly available information, it is that publicly available information that is controlling for purposes of the public disclosure bar, and any duplicative evidence of the elements of the alleged fraud "cannot suffice to surmount the jurisdictional hurdles."  *Springfield Terminal Ry*., 14 F.3d at 655.

## B.      Relator Is Not An Original Source

Because the SAC is based upon public disclosures, Relator's claims can proceed only if he qualifies for the "original source" exception.  As explained below, he does not.

1.      Relator's opposition nowhere identifies any non-public information of which he is purportedly an "original source," let alone explains how his knowledge of that information is both "direct" *and* "independent."  *See Springfield*, 14 F.3d at 656.[17]  Instead, Relator vaguely claims (at 32) that he is an original source because his background allowed him to "understand the significance of the publicly disclosed contract information."  He later explains (at 34) that what he did was speculate that based on his experience with commercial customers Defendants were "likely" overbilling the United States, and then set out to confirm that hunch with "publicly

---

[17] Relator argues (at 32) that Defendants suggested that he "must have 'direct and independent knowledge' of the 'transactions' between the United States and Verizon."  But Defendants do not dispute that under *Springfield* a relator need not be the original source of *all* the material elements of a claim.  14 F.3d at 656-57.  Here, however, Relator is not an original source because he lacks direct and independent knowledge of "*any* essential element of the underlying transaction"—neither the invoice content *nor* the contract terms.  *Id*. at 657.

available, but obscure and difficult to understand contract and billing information."[18]  But a

hunch and subsequent research through public sources is not enough.  Relator's failure to

identify any non-public information on which his allegations are based is fatal to his argument

that he is an "original source" of the allegations.

   The D.C. Circuit, together with many other circuits, has consistently rejected the view

that piecing together publicly disclosed elements is sufficient to make a relator the "original

source" of the allegations, even if the documents require special expertise to interpret.  *See U.S.*

*ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997) ("If a relator

merely uses his or her unique expertise or training to conclude that the material elements already

in the public domain constitute a false claim, then a qui tam action cannot proceed."); *see also*

*Springfield Terminal Ry. Co*, 14 F.3d at 655; *U.S. ex rel. Kreindler & Kreindler v. United Techs.*

*Corp.*, 985 F.2d 1148, 1159 (2d Cir. 1993); *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante*

*P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991).  Courts have rejected attempts

by *qui tam* relators to argue that they are original sources with "direct" information by asserting

that they gathered the information "through [their] own investigation," *U.S. ex rel. Feingold v.*

*AdminaStar Fed., Inc.*, 324 F.3d 492, 497 (7th Cir. 2003), or through "research and review of

public records," *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168,

178-179 (5th Cir. 2004).

   Relator relies (at 32-34) on a Tenth Circuit case, *Kennard v. Comstock Resources, Inc.*,

---

[18] Notably, Relator does not attempt to rely upon the 2004 MCI document or his alleged
knowledge of Verizon's billing systems to support his claim of being an "original source."
Relator admitted that he obtained this information second- or third-hand, thus failing to satisfy
the "direct" prong of the original source inquiry.  *See* Shea Dep. 66:8-18, 78:16-18 (MCI
document was obtained "from a guy that used to do some subcontracting work for me" who got
it from an unnamed Verizon employee); *id.* at 209:14-210:18 (information regarding billing
systems came from former Verizon employee interviewed by a private investigator).

363 F.3d 1039 (10th Cir. 2004). But that case does not support his position. First, *Kennard* did

not hold that the effort of an investigation alone is sufficient to make a relator an original source;

in fact, the *Kennard* court specifically noted that "[a] mere compilation of documents or reports

already in the public domain will not allow a relator to qualify as an original source." *Id.* at

1045. Second, the relators in *Kennard*—unlike Relator here—did not just rely on public

documents. Rather, they relied on "personal, private royalty records" to determine that the

defendant was committing fraud in submitting oil and gas lease payments to the Government,

and used public records of oil and gas leases to "to *support the discovery* of the alleged fraud."

*Id.* at 1046 (emphasis added); *see also id.* ("Relators were not just assemblers of information.").

Third, unlike here, the publicly available information that the *Kennard* relators used was not a

public disclosure from an enumerated source under the FCA. Other courts have rejected the

proposition that *Kennard* has any application when the public information on which relator relies

is itself a "public disclosure." *U.S. ex rel. Atkinson v. Penn. Shipbuilding Co.*, 473 F.3d 506, 522

(3d Cir. 2007). Finally, even if *Kennard* could be read to support Relator's position, such a

reading would be squarely in conflict with the law of this circuit.

       2.      The version of the public disclosure bar amended in March 2010 by the Patient

Protection and Affordable Care Act ("PPACA") does not apply to this case, which was already

pending when PPACA was enacted. *See* Defs. Mem. 21 n.11.[19] But the analysis would be the

---

[19] Relator argues (at 36) that the PPACA amendments should apply to claims that arise after the
effective date of the statute. The cases he cites, however, do not support that contention.
*Atkinson* and *Lujan* held when a complaint was filed *after* the effective date of the 1986
amendments to the FCA, the pre-amendment version of the public disclosure bar nonetheless
applied to pre-amendment conduct. *Atkinson*, 473 F.3d at 512-13; *U.S. ex rel. Lujan v. Hughes
Aircraft Co.*, 162 F.3d 1027, 1031 (9th Cir. 1998). That does not address whether amendments
can be applied to create jurisdiction over later-accruing conduct where the complaint was filed
*before* the amendments were effective. *See U.S. ex rel. Estate of Cunningham v. Millennium
Labs. of Cal.*, 841 F. Supp. 2d 523, 527-529 (D. Mass. 2012) (applying pre-amendment version
of public disclosure bar based on the date of filing of the original complaint).

same even if the post-PPACA version applied to a portion of Relator's claims.  After PPACA, a

relator is an original source only if he "has knowledge that is independent of and materially adds

to the publicly disclosed allegations or transactions[.]"  31 U.S.C. § 3730(e)(4)(B) (2012).  As

discussed above, Relator does not identify *any* non-public information that materially adds to the

publicly disclosed information underlying his claims.  Instead, he simply refers vaguely (at 37) to

his "extensive knowledge of Verizon's internal billing procedures," which he claims "allowed

him to infer" that Defendants were improperly billing the United States.  Relator's suppositions

and inferences, however, cannot substitute for actual "knowledge" that would materially support

his claims of fraud as to the 20 contracts he names in this suit.  Accordingly, Relator's claims

must be dismissed regardless of whether this Court applies the pre- or post-PPACA version of

the public disclosure bar to claims that accrued after March 2010.

## III.    THE SECOND AMENDED COMPLAINT DOES NOT SATISFY RULES 8 & 9(b)

For all of the reasons set forth in Verizon's opening brief, the SAC should be dismissed

for failure to satisfy Rule 8 and the heightened pleading standard of Rule 9(b).  Relator does

remarkably little in his opposition to defend the SAC as drafted.  Relator concedes (at 41) that he

"cannot allege with certainty whether any particular contracts at issue permitted the Non-

Allowable Tax-Like Surcharges"; indeed, the SAC fails to provide *any information at all* about

17 of the 20 named contracts (beyond contract name and number), *see* Defs. Mem. 33.  Relator

concedes (at 42) that he "lacks access to [the] documents" showing "which surcharges [Verizon]

charged the government under each of the contracts."  He concedes (at 42) that the SAC "does

not provide the dates of Verizon's [alleged] fraud."  He concedes (at 43) that he "never worked

for Verizon" and cannot "identify the particular Verizon employees involved in the [allegedly]

fraudulent scheme."  And, he fails to offer any response to Verizon's showing that, even under

the more liberal pleading requirements of Rule 8, he fails adequately to allege scienter.  In short,

Relator offers no basis to conclude that the SAC provides any particularity regarding the "who, what, when, where, and how" of the alleged fraud.

Rather than defend the sufficiency of the allegations in the SAC, Relator devotes the bulk of his response to arguing that Rule 9(b) does not mean what it says and that the particularity requirement should be relaxed in this case. Each of Relator's arguments should be rejected.

1. Relator contends (at 39) that the D.C. Circuit has taken a "'generous approach'" to pleadings in FCA cases. To the contrary, the D.C. Circuit has made clear in FCA cases that Rule 9(b)'s heightened pleading standard requires that a complaint "'state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud,'" and "identify individuals allegedly involved in the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)); *see U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 552 (D.C. Cir. 2002); *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385-86 (D.C. Cir. 1981); *see also U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 203 (D.D.C. 2011) (quoting *Williams*, 389 F.3d at 1256). Those required allegations are referred to as "the 'who, what, when, where, and how'" of the alleged fraud. *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 8 (D.D.C. 2010) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

In arguing for a relaxed standard, Relator cites *U.S. v. Kellogg Brown & Root Services, Inc.*, 800 F. Supp. 2d 143 (D.D.C. 2011). *Kellogg* relied on *U.S. ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8 (D.D.C. 2003). *Ortega*, in turn, relied on the D.C. Circuit's decision in *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000). *Sparrow*, however, was about Rule 8—not Rule 9(b)—and was not an FCA case. *See id.* at 1113-14,

1118; *see also Ortega*, 240 F. Supp. 2d at 18 (noting that "Rule 8 . . . governed *Sparrow*").  The

cases thus do not support relaxation of Rule 9(b) here.

      2.     Relator also contends (at 38) that Rule 9(b) is satisfied as long as the SAC

"provide[s] enough information to allow Verizon to prepare a defense."  But Rule 9(b) is not

directed merely toward ensuring notice.  As the D.C. Circuit has stated:

> Rule 9(b)'s particularity requirement serves several purposes.  It "discourage[s]
> the initiation of suits brought solely for their nuisance value, and safeguards
> potential defendants from frivolous accusations of moral turpitude. . . . And
> because 'fraud' encompasses a wide variety of activities, the requirements of
> Rule 9(b) guarantee all defendants sufficient information to allow for preparation
> of a response."

*Williams*, 389 F.3d at 1256 (quoting *Joseph*, 642 F.2d at 1385) (alterations in original).  Notably,

a primary purpose of Rule 9(b) is to "prevent[ ] the filing of a complaint as a pretext for the

discovery of unknown wrongs."  *Kowal*, 16 F.3d at 1279 n.3 (internal quotation marks omitted;

alteration in original); *see also U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313

n.24 (11th Cir. 2002).  As this Court explained in *U.S. ex rel. Batiste v. SLM Corp.*, 740 F. Supp.

2d 98 (D.D.C. 2010), "[t]he point of Rule 9(b)'s *heightened* pleading standard is that it provides

*more* than what is normally required to give adequate notice of the essential elements of a

claim"—"a complaint may give adequate notice without also satisfying Rule 9(b)."  *Id.* at 104

(emphasis in original); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 531-32 (2002)

(contrasting the "simple requirements of Rule 8(a)," under which a complaint "must simply give

the defendant fair notice," with the "greater particularity" requirements of Rule 9(b) (internal

quotation marks omitted)).

      In any event, Relator's contention (at 38) that he has provided Verizon with "enough

information" to "prepare a defense" is meritless.  It is not sufficient notice to allege that there

"likely" (Opp. 34) were some improper surcharges under some of 20 contracts.  The SAC fails to

provide the *specific* notice of the alleged fraud so as to enable Defendants "to respond

specifically and quickly to the potentially damaging allegations."  *U.S. ex rel. Joshi v. St. Luke's

Hosp. Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (internal quotation marks omitted).  Indeed,

Relator's failure to identify which contractual provisions were allegedly violated, and how,

deprives Defendants of the ability, if appropriate, to move to dismiss those claims as legally

insufficient.  To provide the higher degree of notice that Rule 9(b) requires, a complaint must

allege the who, what, when, where, and how of the asserted fraud.  The SAC plainly fails to do

this.  Even the cases Relator cites (at 40) as examples of sufficient notice under Rule 9(b) show

that the SAC is insufficient because they provide far more of the required particulars than

Relator does.  *See, e.g., U.S. v. First Choice Armor & Equip., Inc.*, 808 F. Supp. 2d 68, 76

(D.D.C. 2011) ("The government sets out in detail the time, place, and content of the false

representations and identifies individuals allegedly involved in the fraud[.]"); *Synnex*, 798 F.

Supp. 2d at 80 (providing specific dates of allegedly fraudulent orders placed through GSA

website).

       3.     Relator also suggests that the Court should "relax" Rule 9(b)'s heightened

standard because the alleged fraudulent scheme in this case was "'particularly complex.'"

Opp. 39 (quoting *Kane*, 798 F. Supp. 2d at 203 n.22).  But there is no basis in D.C. Circuit case

law for such an approach.  *See supra* at p. 19; *see also U.S. ex rel. Grynberg v. Ala. Pipeline Co.*,

No. Civ. 95-725, 1997 WL 33763820, at *3 (D.D.C. Mar. 27, 1997) (noting that the D.C. Circuit

examined the argument that Rule 9(b) should be "reduced in complex cases" and held that "a

complaint alleging fraud must at least state the time, place, and content of [the] false

representations, the facts misrepresented, and the consequence of the fraud" (citing *Joseph*, 642

F.2d at 1385)).  Moreover, the reason for relaxation, if ever appropriate, is primarily one of

"logistical efficiency." *U.S. ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 509 (6th Cir.

2007). "Where the allegations in a relator's complaint are complex and far-reaching, pleading

every instance of fraud would be extremely ungainly, if not impossible." *Id.* (internal quotation

marks omitted). But a relator must still provide "*representative samples* of the broader class of

claims" submitted to the Government to survive a Rule 9(b) challenge. *Id.* at 510. Here,

Relator's complaint fails to specify "*any* representative claims," *U.S. ex rel. Digital Healthcare,*

*Inc. v. Affiliated Computer Servs., Inc.*, 778 F. Supp. 2d 37, 53 (D.D.C. 2011) (emphasis added);

the absence of detail is not merely to avoid an "ungainly" complaint.

      4.      Citing the D.C. Circuit's *Williams* decision, Relator also argues (at 42) that Rule

9(b)'s standard should be relaxed because he has "limited access" to relevant documents.

Although *Williams* noted that the D.C. Circuit had considered lack of access to documents in

*Kowal*, the Court ultimately did not render a holding on this point because the relator had raised

the argument too late. *See* 389 F.3d at 1258. *Kowal*, moreover, was not an FCA case and was

addressing whether to permit pleading "on information and belief." *See* 16 F.3d at 1279 n.3.[20]

In FCA cases, however, it is particularly important to hold a relator to his obligation of

complying with Rule 9(b) because a relator is required actually to possess non-public

information about a fraud on the Government *when he brings suit*—he cannot simply wait for

discovery in the hope of finding information that might make out a claim. *See* Defs. Mem. 40-

42. Courts have thus repeatedly rejected Relator's argument and have declined to relax Rule

9(b) in FCA cases due to lack of access to information. *See U.S. ex rel. Karvelas v. Melrose-*

---

[20] Relator also relies on *Kane*, but the footnote Relator cites similarly addressed the propriety of
pleading on "information and belief" and did not consider the unique structure of the FCA. *See*
798 F. Supp. 2d at 206 n.29. In any event, *Kowal* makes clear a plaintiff must at least set forth
"the facts upon which the allegations are based." 16 F.3d at 1279 n.3. Here, Relator concedes
(at 41) that he "cannot allege with certainty whether any particular contracts at issue permitted
the Non-Allowable Tax-Like Surcharges."

*Wakefield Hosp.*, 360 F.3d 220, 229-231 (1st Cir. 2004) (rejecting the notion "that the

particularity requirements of Rule 9(b) may be relaxed in an FCA *qui tam* action where the

information relevant to the fraud is peculiarly within the perpetrator's knowledge" (internal

quotation marks omitted)); *Joshi*, 441 F.3d at 559-560 (rejecting argument that court should

apply "relaxed pleading standard" because "information concerning the alleged fraud is uniquely

within the defendants' control"); *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d

304, 308 (5th Cir. 1999) ("A special relaxing of Rule 9(b) is a qui tam plaintiff's ticket to the

discovery process that the statute itself does not contemplate."), *abrogated on other grounds by*

*U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009).[21]

     5.      In any event, even under a "relaxed" application of Rule 9(b), the SAC is

deficient. Relator does not dispute that he failed to allege the terms of the 20 relevant contracts

or the billings under those contracts with any particularity. Relator also does not dispute that he

failed to allege when the alleged fraud occurred. He asserts (at 40) that the SAC's failure to

specify when the alleged fraud occurred is immaterial, since Verizon is capable of determining

"the life of each contract" at issue. But speculation that Verizon might have improperly billed

for some surcharge on one or more of those 20 contracts at some point in time does not even

arguably satisfy Rule 9(b)'s heightened standard. Although "a complaint that covers a

multi-year period may not be required under Rule 9(b) to contain detailed allegation of all facts

supporting each and every instance of submission of a false claim, *some information* on the false

---

[21] *See Clausen*, 290 F.3d at 1314 n.25 (rejecting "argument that [the court] should apply a more
lenient pleading standard because evidence of fraud was uniquely held by the defendant"); *Ebeid
ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) ("To jettison the particularity
requirement simply because it would facilitate a claim by an outsider is hardly grounds for
overriding the general rule, especially because the FCA is geared primarily to encourage insiders
to disclose information necessary to prevent fraud on the government.").

claims must be included." *U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp.

2d 28, 35 (D.D.C. 2003) (emphasis added).  Here, that specificity is entirely lacking.

Relator also argues (at 43) that the Court should excuse the requirement to identify the

"who" of the alleged fraud because Relator "never worked for Verizon."  The D.C. Circuit made

clear in *Williams*, however, that Rule 9(b) "require[s] pleaders to identify individuals allegedly

involved in the fraud."  389 F.3d at 1256.  As this Court has since recognized: "FCA cases in this

circuit reveal that specificity regarding the identities of individual actors is required. . . .  [I]t is

not enough for a complaint to refer generally to 'management' while providing a list of names

without explaining the role these individual defendants played in the alleged fraud."  *U.S. ex rel.*

*Bender v. North Am. Telecomms., Inc.*, 686 F. Supp. 2d 46, 53-54 (D.D.C. 2010); *see Digital*

*Healthcare, Inc.*, 778 F. Supp. 2d at 53.  And courts that have excused the identification

requirement have only done so in the case of an "otherwise detailed complaint."  *U.S. ex rel.*

*Westrick v. Second Chance Body Armor*, 685 F. Supp. 2d 129, 139 (D.D.C. 2010); *see also*

Opp. 43 (quoting *Synnex*, 798 F. Supp. 2d at 80).

6.      Finally, Relator suggests that he should be relieved of complying with Rules 8

and 9(b) because his counsel "wrote to Verizon's counsel" before filing the SAC and,

recognizing "that Verizon may possess information that would rebut Relator's allegations,"

invited Verizon "to respond if you think we're wrong."  Opp. 37 (quoting Ex. 3).  That argument,

however, stands pleading law on its head.  The fact that Relator filed a complaint alleging fraud

under 20 contracts about which he lacked complete information is not a reason to relax the

Federal Rules and to "unlock the doors of discovery," *Ashcroft v. Iqbal*, 556 U.S. 662, 677

(2009), based on nothing more than Relator's hope that it might reveal the factual basis Relator

was supposed to already have.

## IV.   DISMISSAL SHOULD BE WITH PREJUDICE

Dismissal of Relator's SAC should be with prejudice.  Relator concedes (at 44) that leave to amend need not be afforded where it would be futile.  Here, none of the deficiencies of Relator's SAC can be repaired in an amended complaint.  As explained above, the first-to-file bar must be satisfied at the time of filing of the initial complaint.  Compliance cannot be achieved through amendment.  *See supra* at pp. 10-12.  Similarly, Relator would be unable to avoid the public disclosure bar absent adoption of an entirely new theory of fraud.  *See, e.g., U.S. ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104 (1st Cir. 2010) (dismissing with prejudice based on public disclosure bar).  Finally, Relator would be unable to address the pleading deficiencies in the SAC because, three years after filing this suit, Relator still lacks a basis to plead a claim and cannot rely on discovery to attempt to fill that gap.  *See* Defs. Mem. 40; *see also Klein v. Toupin*, No. 05-647, 2006 WL 997959, at *2 (D.D.C. Apr. 14, 2006) (leave to amend "is improper where the amendment would be futile").[22]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the SAC with prejudice.

---

[22] Relator contends that any dismissal under the first-to-file bar should be without prejudice to his filing a new complaint "the next day."  This issue need not be addressed in this case.  It can be litigated when and if such a new suit is filed.  Although some courts (outside of this circuit) have adopted Relator's view, the better view is that the first-to-file bar cannot simply be evaded by waiting out the first-filed suit.  *See, e.g., U.S. ex rel. Powell v. Am. InterContinental Univ., Inc.*, No. 1:08-CV-2277, 2012 WL 2885356, at *4 (N.D. Ga. July 12, 2012); Boese, *Civil False Claims and Qui Tam Actions* § 4.03[C][2][b]; *see also U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001) ("Dismissed or not," a first-filed action "alerted the government to the essential facts of a fraudulent scheme.").  The Court also need not address in this action whether dismissal of the SAC under Rule 9(b) is binding on the United States.  *See U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (finding the district court had erred when it "entered an order stating that the dismissal, though with prejudice to [the relator], is without prejudice to the United States").

Dated:  October 9, 2012                Respectfully submitted,

                                        /s/ Randolph D. Moss
                                       _____
                                       Randolph D. Moss (D.C. Bar No. 417749)
                                       Jennifer M. O'Connor (D.C. Bar No. 460352)
                                       WILMER CUTLER PICKERING
                                          HALE AND DORR LLP
                                       1875 Pennsylvania Avenue, N.W.
                                       Washington, D.C. 20006
                                       Tel.: (202) 663-6000
                                       Fax: (202) 663-6363
                                       randolph.moss@wilmerhale.com

                                       *Attorneys for Defendants*

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA
ex rel. BEN BANE,**

      **Plaintiffs,**

**v.**                          **Case No.  8:06-CV-467-T-30EAJ**

**LINCARE  HOLDINGS, INC., et al.,**

      **Defendants.**

_____/

# ORDER

THIS CAUSE comes before the Court upon Defendants Lincare Holdings Inc. and Lincare Inc.'s (hereinafter collectively "Lincare") Dispositive Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (Dkt. 32), Bane's response in opposition to Lincare's motion (Dkt. 36), and Lincare's Motion for Leave to File A Reply to Relator's Response in Opposition to Motion to Dismiss (Dkt. 37).  The Court, having considered the motions, responses, memoranda, and the complaint and being otherwise advised in the premises, finds that Lincare's motion should be granted.

## Background

On March 16, 2006, relator Ben Bane filed a *qui tam* complaint under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Lincare and Life Care Diagnostics

(Dkt. 1).[1] On February 6, 2007, the United States filed a Notice of Election to Decline Intervention (Dkt. 2). On February 8, 2007, the Court ordered the seal lifted on the Complaint and directed Bane to serve the Complaint upon the Defendants (Dkt. 3). See 31 U.S.C. 3730(b)(2). Lincare was served on May 22, 2007 (Dkts. 19 & 20).

In his First Amended Complaint, filed June 20, 2007, Bane asserts that Lincare conspired with Life Care and other independent testing laboratories[2] around the United States to submit and cause to be submitted fraudulent claims for payment to Medicare for (1) medically unnecessary and redundant additional services performed in conjunction with pulse oximetry testing and (2) services obtained in violation of the Anti-Kickback Act, 42 U.S.C. § 1320a-7b.

Lincare seeks dismissal of this cause of action pursuant to Fed. R. Civ. P. 12(b)(1) on grounds that it is barred by the first-to-file provisions of 31 U.S.C. § 3730(b)(5). Alternatively, Lincare asserts that the First Amended Complaint is subject to dismissal because it does not meet the particularity requirements of Fed. R. Civ. P. 9. Finally, Lincare moves under Fed. R. Civ. P. 12(b)(6) for dismissal of the claim brought pursuant to the Anti-Kickback Act.

---

[1]Section 3730(b)(2) provides that a *qui tam* complaint shall (1) be served on the Government; (2) be "filed in camera;" and (3) "remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2).

[2]Bane names seven other oximetry companies as Lincare's co-conspirators: Breathe Easy, N2Air of Louisville, Kentucky, B&M Oximetry Lab, Inc. of Plantation, Florida, Healthy Choice of Memphis, Tennessee, Respiratory Outreach of Chico/ Sacramento, California, Oximetry Trendy of Toledo, Ohio, and Peterson Oximetry of Southern California (Dkt. 24 ¶ 27). None are parties to this action; however, Bane, as relator, has brought a separate, but similar, *qui tam* action in this division against Lincare and Breathe Easy. See United States ex rel. Ben Bane v. Breathe Easy Pulmonary Services, Inc., et al., Case No. 8:06-CV-040-T-24MAP.

## Discussion

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for dismissal based on a lack of subject matter jurisdiction. A party may make either a facial or factual challenge to a court's subject matter jurisdiction. See McElmurray v. Consolidated Government of Augusta-Richmond County, 501 F.3d 1244, 1251-52 (11th Cir. 2007). Because "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, matters outside the pleadings, such as testimony and affidavits, are considered." McElmurray, 501 F.3d at 1251 (citation omitted). In resolving a challenge to its subject matter jurisdiction, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from evaluating for itself the merits of jurisdictional claims. Id. "The district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).[3]

In this case, Lincare's argument that Bane's claims are barred under the FCA's first-to-file provisions presents a factual challenge to the Court's subject matter jurisdiction. Specifically, Lincare contends that Bane's complaint is duplicative of the claims he has raised

---

[3]See Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981).

in a separate, but similar, *qui tam* action in this division against Lincare and Breathe Easy. See United States ex rel. Ben Bane v. Breathe Easy Pulmonary Services, Inc., et al., Case No. 8:06-CV-040-T-24MAP ("Breathe Easy"), and is therefore barred by the FCA's provisions for *qui tam* actions by private persons, 31 U.S.C. § 3730(b)(5) (2000), which provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." A jurisdictional limit on the courts' power to hear certain duplicative *qui tam* suits, see United States ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1183 (9th Cir. 2001), this provision prevents a relator from filing claims that are the subject of existing suits. Lincare relies, *inter alia*, on Untied Stated ex rel. Cooper v. Blue Cross and Blue Shield of Florida, Inc., to support its position. 19 F.3d 562, 565 and n.4 (11th Cir. 1994) ("[O]nce one suit has been filed by a relator or by the government, all other suits against the same defendant based on the same kind of conduct would be barred" (citation omitted).).

The Court must judge whether § 3730(b)(5) bars Bane's *qui tam* action by looking at the facts as they existed at the time this action was brought – March 16, 2006. See Smith v. Sperling, 354 U.S. 91, 93 n. 1 (1957) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought." (quotation omitted)). At that time, Bane's suit against Lincare and Breathe Easy, filed January 6, 2006, was pending. Thus, if Bane's suit is a "related action" based on the facts underlying the Breathe Easy complaint, then it was barred from its inception by § 3730(b)(5). See United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 234-35 n. 6 (3d Cir. 1998) ("[W]e may decide

whether the later complaints allege the same material elements as claims in the original lawsuits simply by comparing the original and later complaints.").

Since § 3730(b)(5) speaks of "related" qui tam actions, its first-to-file bar is not limited to situations in which the original and subsequent complaints rely on identical facts. See Lujan, 243 F.3d at 1189. Once the relator has put the government on notice of its potential fraud claim, the purpose behind allowing *qui tam* litigation is satisfied. See LaCorte, 149 F.3d at 234 ("[D]uplicative claims do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds."). Moreover, if they had to share in their recovery with third parties who do no more than tack on additional factual allegations to the same essential claim, original *qui tam* relators would be less likely to act on the government's behalf. See id.

Bane acknowledges that this case and Breathe Easy are "related cases" under the Local Rules, but contends that they are not "related actions" for purposes of the first-to-file bar because this case seeks to recover for false claims submitted by Life Care Diagnostics, while the Breathe Easy case seeks to recover for false claims submitted by Breathe Easy.

Citing United States ex rel. Ortega v. Columbia Healthcare, Inc., 240 F.Supp.2d 8, 14 (D.D.C. 2003) in opposition to Lincare's first-to-file argument, Bane contends that § 3730(b)(5) does not "prohibit an amendment to a complaint that adds an allegation made in an earlier-filed suit." Bane's reliance on Ortega is misplaced. In Ortega, the relator argued that her amended complaint should relate back to the date of her original complaint, which

would make her the first-to-file, emphasizing that § 3730(b)(5) states that "no person may 'bring' an action, but does not prohibit an amendment to a complaint that adds an allegation made in an earlier-filed suit." The district court acknowledged that the realtor was "literally correct that the language of § 3730(b)(5) makes no reference to amendment," but found that "it is clearly outside the intent and purpose of § 3730(b)(5) to permit relation back." Id. at 14. This case is clearly distinguishable. Even if there were an earlier filed complaint in this case that could be used as a vehicle to avoid the first-to-file provision under the relation back rule, which there is not, this Court agrees with the Ortega court's finding that relation back to circumvent the provisions of § 3730(b)(5) would be contrary to the "intent and purpose" of the statute. To the extent that Bane may be arguing that once the initial complaint is filed, amendments to the complaint are not subject to the first-to-file rule, the argument is likewise rejected.

Bane argues that § 3730(b)(5)'s first-to-file bar is not applicable to a complaint filed by a relater based on an earlier complaint filed by the same relator. Bane asserts that the first-to-file bar does not prevent a relator from filing multiple suits against a defendant based on the same fradulent scheme. According to Bane, the first-to-file bar simply means that a relator "is precluded from collecting a bounty [under the FCA] if someone else has filed the claim first." United States ex rel. Taxpayers Against Fraud v. General Electric Co., 41 F.3d 1032, 1035 (7th Cir. 1994) (emphasis added). Similarly, Bane relies on a statement by the Sixth Circuit Court of Appeals that the courts must dismiss a relator's claim under §

3730(b)(5) 'if the claim had already been filed *by another*," <u>Walburn v. Lockheed Martin Corp</u>, 431 F.3d 966, 970 (6th Cir. 2005 ) (emphasis added).

Bane fails to cite, and the Court is unaware of, any case in which a relator was allowed to proceed in a second cause of action brought under the FCA against a defendant based on the same fraudulent scheme that formed the basis for claims against that defendant in a pending cause of action filed under the FCA by the same realtor.

A comparison of the original complaints filed in each case reveals that the crux of each of Bane's complaints is that Lincare, as the oxygen provider, allegedly schemed with the laboratory to circumvent the Medicare framework by bundling[4] a medically unnecessary procedure with a procedure certified by the patient's physician as medically necessary, causing Medicare to pay for medically unnecessary and redundant services (Dkt. 1 ¶ 2; Case No. 8:06-CV-40-T-24MAP, Dkt. 1 ¶ 2). In fact, as Lincare points out, the causes of action are so closely related that when Bane amended his complaint in the instant matter, he referenced Lincare's alleged conspiracy with Breathe Easy 22 times in the 15-page document, <u>see</u> Dkt. 24, ¶¶ 2, 17, 18, 22, 24, 25, 27, 28, 30, 46, 47, 59.  Notably, in <u>Breathe Easy</u>, Bane stated in his motion to file a second amended complaint that it "alleges a national conspiracy between Lincare and a variety of oximetry testing companies around the United states, including Defendant Breathe Easy, Defendant Premier, and a local company named

---

[4]The fraudulent "bundling" of laboratory tests, as mixing unnecessary ones with reasonably necessary tests, has been the subject of criminal prosecutions and *qui tam* actions under the False Claims Act. <u>See</u> <u>United States v. Thurston</u>, 358 F.3d 51, 54 (1st Cir. 2004) (affirming conspiracy to defraud Medicare), <u>judgment vacated</u>, 543 U.S. 1097 (2005) (sentencing guideline issues) ; <u>United States ex rel. Merena v. SmithKline Beecham Corp.</u>, 205 F.3d 97, 98-99 (3d Cir. 2000); <u>United States v. Shaw</u>, 113 F. Supp. 2d 152, 157 (D. Mass. 2000) (mail fraud and conspiracy to defraud Medicare and Anti-Kickback Act).

Life Care Diagnostics" (Case No. 8:06-CV-40-T-24MAP, Dkt. 32 at 1). Bane did not, however, move to consolidate these matters or amend the <u>Breathe Easy</u> complaint to add the alleged conspiracy between Life Care and Lincare. Had Bane shown that he sought to amend the <u>Breathe Easy</u> complaint to include the claims against Lincare and Life Care and his efforts to do so were rejected, this Court might consider the bar too harsh. A review of the record reveals, however, that no such attempt was made.

Bane contends that the first-to-file bar "of protecting the Government by preventing double recovery from parasitic lawsuits" would not be served by granting Lincare's motion to dismiss. Bane posits that the risk of letting this matter go forward does not pose a risk of double recovery because this case seeks recovery for false claims submitted by Life Care Diagnostics, while the <u>Breathe Easy</u> case seeks recovery for false claims submitted by Breathe Easy. According to Bane, granting Lincare's motion to dismiss "will prevent the government from obtaining any recovery in this case." The Court finds this argument unpersuasive.

## <u>Conclusion</u>

Having compared the complaints in the instant case and <u>Breathe Easy</u>, the Court finds that Lincare's argument has merit. Here, Bane's claims are based in significant measure on the general conduct relied upon in the <u>Breathe Easy</u> *qui tam* action. The pendency of the initial *qui tam* action blocks other suits that do no more than assert the same material elements of fraud, regardless of whether those later complaints are able to marshal additional factual support for the claim. Bane's complaint is, therefore, subject to dismissal pursuant

to § 3730(b)(5)'s first-to-file bar. In view of the foregoing, the Court need not address the other issues briefed by the parties.

It is therefore **ORDERED** and **ADJUDGED** that:

1.   Lincare's Motion for Leave to File A Reply to Relator's Response in Opposition to Motion to Dismiss (Dkt. 37) is **DENIED**.

2.   Bane shall, not later than 5:00 p.m., March 24, 2008, inform the Court whether he will go forward against only Life Care in these proceedings; move to amend the complaint in United States ex rel. Ben Bane v. Breathe Easy Pulmonary Services, Inc., et al., Case No. 8:06-CV-040-T-24MAP; or agree to transfer this matter to the Honorable Susan C. Bucklew for potential consolidation with the Breathe Easy case. Failure to comply with this order within the allotted time will result in **dismissal** of the counts against Lincare without further notice.

**DONE** and **ORDERED** in Tampa, Florida on March 14, 2008.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2006\06-cv-467 Lincare MTD New.wpd

## CERTIFICATE OF SERVICE

On this 9th day of October, 2012, I electronically filed the Defendants' Reply

Memorandum in Support of Motion to Dismiss the Second Amended Complaint with the Clerk

of the Court by using the CM/ECF system, which will send a notice of electronic filing to the

following:

> Christopher B. Mead
> Lance A. Robinson
> LONDON & MEAD
> 1225 19th St., NW
> Suite 320
> Washington, DC 20036
> *Attorneys for Relator Stephen Shea*
>
> Doris Denise Coles-Huff
> U.S. ATTORNEY'S OFFICE FOR D.C.
> 555 4th St., NW
> Washington, DC 20530
> *Attorney for the United States*

And on the 10th of October, 2012, the following will be served by First-Class Mail:

> Arnold Mark Auerhan
> U.S. DEPARTMENT OF JUSTICE
> Civil Division
> Ben Franklin Station
> P.O. Box 261
> Washington, DC 20044
> *Attorney for the United States*

> /s/ Randolph D. Moss
> _____
> Randolph D. Moss
> WILMER CUTLER PICKERING
>    HALE AND DORR LLP
> *Attorney for Defendants*