```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

_____
UNITED STATES OF AMERICA,                :
EX REL. STEPHEN M. SHEA                  :
                                         :
-and-                                    :
                                         :
STEPHEN M. SHEA,                         :
                                         :
        Plaintiffs,                      :
                                         :
        v.                               :      No. 1:09-cv-1050 (GK)
                                         :
VERIZON BUSINESS NETWORK SERVICES        :
INC.; VERIZON FEDERAL INC.;              :
MCI COMMUNICATIONS SERVICES, INC.        :
d/b/a VERIZON BUSINESS SERVICES;         :
and CELLO PARTNERSHIP d/b/a              :
VERIZON WIRELESS,                        :
                                         :
        Defendants.                      :
_____:

## MEMORANDUM OPINION

Relator Stephen M. Shea ("Plaintiff" or "Relator") brings this qui tam action against Verizon Business Network Services, Inc., Verizon Federal Inc., MCI Communications Services, Inc. d/b/a Verizon Business Services, and Cello Partnership d/b/a Verizon Wireless ("Defendants" or "Verizon") pursuant to the Federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq.

This matter is before the Court on Defendants' Motion to Dismiss the Second Amended Complaint [Dkt. No. 51]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, Defendants'

§

Motion to Dismiss is **granted** for lack of jurisdiction as to Relator and **granted without prejudice** as to the United States.

## I. BACKGROUND[1]

Plaintiff filed his first qui tam complaint against Verizon on January 17, 2007. Civ. No. 1:07-cv-0111 (GK) ("Verizon I") [Verizon I Dkt. No. 1, "2007 Complaint"]. The 2007 Complaint explained that the "action concern[ed] the knowing submission to the United States of certain prohibited surcharges under contracts to provide telecommunications services between defendant Verizon Communications Inc. (and its division Verizon Business) and the General Services Administration." 2007 Complaint ¶ 2. The United States intervened in the 2007 lawsuit, and in February 2011 the parties reached a settlement agreement in which Verizon paid the United States $93.5 million. The settlement agreement did not include any admission of liability. The case was dismissed on February 28, 2011. [Verizon I Dkt. No. 41].

Plaintiff filed the current case, a second qui tam complaint against Verizon on June 5, 2009. Civ. No. 1:09-cv-01050 (GK) ("Verizon II") [Dkt. No. 1, "2009 Complaint"]. On

---

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, unless otherwise noted, the facts set forth herein are taken from the Second Amended Complaint.

November 30, 2011, the United States informed the Court that it was "not intervening at this time" in the 2009 lawsuit. [Dkt. No. 26]. On July 26, 2012, Plaintiff filed his First Amended Complaint. [Dkt. No. 37]. On September 12, 2012 Plaintiff filed his Second Amended Complaint ("SAC"), which is the current complaint in Verizon II and the subject of the Motion to Dismiss presently before the Court.

The Second Amended Complaint explains that "[t]his lawsuit is based on a scheme by [] [Verizon] to defraud the United States by knowingly billing the government for non-allowable surcharges . . . ." SAC ¶ 1. Plaintiff claims that his knowledge of the fraud is "[b]ased on his experience consulting with large commercial telecommunications customers" and that, as a consultant, he "learned that most telecommunication carriers, including Worldcom, later named MCI Communications Corp., acquired by Verizon in 2006 (collectively 'MCI/Verizon'), had a custom and practice of charging [Non-Allowable Tax-Like Charges]." SAC ¶ 3. The Second Amended Complaint then alleges that "MCI/Verizon overcharged the United States, just like its commercial customers." SAC ¶ 4.

The Second Amended Complaint describes the following as the source of Plaintiff's insider knowledge: "In 2004, Shea received an MCI document indicating that the company was charging the government for regulatory fee surcharges, and various state

-3-

taxes, including utility taxes, ad valorem/property taxes, and business, occupational, and franchise taxes." SAC ¶ 4. The Complaint further claims that "[a] former Verizon employee, who worked at the company for over 30 years and retired as a manager, senior staff consultant, confirmed that Verizon did not have a separate billing system for federal customers and commercial customers, and that Verizon's billing system did not have the capability to turn off the surcharges that were generally charged to all customers." SAC ¶ 27. The Second Amended Complaint then alleges that "[b]ased on Verizon's practice of improperly billing Non-Allowable Tax-Like Charges to commercial customers and the government, on information and belief, Verizon improperly billed for Non-Allowable Tax-Like Charges on the following federal telecommunication contracts [listing 20 contracts between Defendants and the U.S. government]." SAC ¶ 28.

On September 12, 2012, Defendants filed their Motion to Dismiss the Second Amended Complaint ("MTD"). [Dkt. No. 51]. On September 27, 2012, Plaintiff filed his Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ("Opposition"). [Dkt. No. 54]. On October 9, 2012, Defendants filed their Reply in Support of their Motion to Dismiss the Second Amended Complaint ("Reply"). [Dkt. No. 55]. And on

October 25, 2012, the United States filed its Statement of Interest. [Dkt. No. 56].[2]

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success . . . [,] must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [, and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008)

---

[2] The United States takes no position as to the merits of Defendants' Motion to Dismiss. It simply states that because the United States "had no part in preparing the pleadings it should not be prejudiced if [Relator] has failed to plead his allegations sufficiently to meet the requirements of Rules 8 and 9(b), or if [] [R]elator is barred or disqualified from pursuing the allegations under 31 U.S.C. § 3730(b)(5) or 31 U.S.C. § 3730(e)(4)." Statement of Interest at 4. The United States then requests that "if the Court dismisses this action, that such dismissal be without prejudice to the United States." Id.

(citations omitted) (internal quotation marks omitted). A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 557) (alteration in Iqbal).

Where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. See Shuler v. U.S., 531 F.3d 930, 932 (D.C. Cir. 2008). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur v. CIA, 273 F. Supp. 2d 119, 122 (D.D.C. 2003) (internal quotation marks omitted). The Court may consider matters outside the pleadings and may rest its decision on its own resolution of disputed facts. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

**III. ANALYSIS**

The history of the FCA's qui tam provisions "demonstrates repeated congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic

-6-

behavior." U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp., 318 F.3d 214, 217 (D.C. Cir. 2003) (quoting U.S. ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 651 (D.C. Cir. 1994)). As part of that effort, Congress enacted the "first-to-file" bar. 31 U.S.C. § 3730(b)(5); see Hampton, 318 F.3d at 217.

The first-to-file bar provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." § 3730(b)(5).

Our Court of Appeals has explained that this bar "furthers the statute's 'twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own.'" U.S. ex rel. Batiste v. SLM Corp., 659 F.3d 1204, 1209 (D.C. Cir. 2011) (quoting Hampton, 318 F.3d at 217); see also U.S. ex rel. Chovanec v. Apria Healthcare Group Inc., 606 F.3d 361, 364 (7th Cir. 2010) (explaining that § 3730(b)(5) is intended to bar "secondary suits that do no more than remind the United States of what it has learned from the initial suit," because "[t]he author of the fraud won't escape when the first suit (or the ensuing federal investigation) tells the agency everything it needs to know"); U.S. ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 516 (6th Cir. 2009) (noting that the interpretation of the first-to-file rule should comport with the policy of

"ensuring that the government has notice of the essential facts of an allegedly fraudulent scheme") (internal citations omitted); Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 (10th Cir. 2004) ("Once the government is put on notice of its potential fraud claim, the purpose behind allowing qui tam litigation is satisfied.").

Defendants argue that the Second Amended Complaint should be dismissed for lack of subject matter jurisdiction[3] under the FCA's first-to-file bar.[4] Defendants contend that "[b]ecause the present action [Verizon II] is 'related' to, and based on the facts underlying [] the 2007 Lawsuit [Verizon I], it could be brought only by the Government, not a private relator." MTD at 20.

Plaintiff responds that the first-to-file rule does not bar the Second Amended Complaint because: "(1) Relator Shea filed both actions at issue – [and therefore] Verizon I only bars someone other than Shea from filing a related action; (2)

---

[3] The first-to-file bar is jurisdictional. See, e.g., U.S. ex rel. Ortega v. Columbia Healthcare, Inc., 240 F. Supp. 2d 8, 11 (D.D.C. 2003) ("If an action 'based on the facts underlying' a pending case comes before a court, it must dismiss the later-filed case for lack of jurisdiction."); Batiste, 659 F.3d at 1206-07 (affirming dismissal for "lack of subject matter jurisdiction").

[4] Defendants also argue that the Second Amended Complaint should be dismissed for other, independent reasons. Given the Court's conclusion, infra, that this action is barred by the FCA's first-to-file bar, it is not necessary to address the merits of Defendants' additional arguments.

Verizon I was not pending when the Second Amended Complaint was filed; and (3) Verizon I and Verizon II are not related actions because the Second Amended Complaint alleges that Verizon committed fraud on contracts and U.S. agencies not at issue in Verizon I." Opposition at 9.

### A. The First-to-File Bar Applies to Successive Related Actions Brought by the Same Relator

Plaintiff contends that Defendants' Motion to Dismiss "completely ignores the threshold issue of whether the first-to-file rule applies to the same relator who later files a second related action" and that "[e]very circuit opinion addressing the issue . . . say[s] that it does not." Id. Plaintiff then discusses at length Bailey v. Shell W. E&P Inc., 609 F.3d 710 (5th Cir. 2010) and U.S. ex rel. Precision Companies v. Koch Industries, 31 F.3d 1015 (10th Cir. 1994) to support his argument. Id. at 9-14.[5]

In determining whether § 3730(b)(5) applies to the same relator who later files a second related qui tam action, the Court must always begin its analysis with the text of the statute itself. See Murphy Exploration and Production Co. v. U.S. Dept. of the Interior, 252 F.3d 473, 480 (D.C. Cir. 2001)

---

[5] Plaintiff also cites in footnote U.S. ex rel. Taxpayers Against Fraud v. GE, 41 F.3d 1032 (6th Cir. 1994) and Walburn v. Lockheed Martin Corp., 431 F.3d 966 (6th Cir. 2005) to support his position. These cases do not even purport to address the issue presented here.

("As always, in interpreting a statute, we begin with the text of the statute itself."). "[I]n interpreting a statute a court should always turn first to one [] cardinal canon before all others," that when Congress writes a statute, it "says . . . what it means and means . . . what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).

The plain language of § 3730(b)(5) is clear: once "a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." § 3730(b)(5) (emphasis added). This provision states without ambiguity or qualification that "no person" other than the Government may bring successive related actions. "The statute does not say 'no other person except the Government may bring an action,' it simply says 'no person' which would apply equally to the original relator as any other person." U.S. ex rel. Smith v. Yale-New Haven Hospital, Inc., 411 F. Supp. 2d 64, 74-75 (D. Conn. 2005) (emphasis in the original); see also U.S. ex rel. LaCorte v. Wagner, 185 F.3d 188, 191 (4th Cir. 1999) (holding that "no person other than the Government" is "unequivocal language" and that because "Wagner and Dehner are persons other than the government . . . the statute on its face precludes them from intervening.").

Moreover, contrary to Plaintiff's contention, Bailey does not support the general proposition that the first-to-file bar

is inapplicable as "to the same relator who later files a second related action." Opposition at 9. The issue in Bailey was not whether it was permissible for the same relator to bring successive related FCA claims, but rather, whether it was permissible for the same relator to make the same qui tam claim in a different jurisdiction, i.e., to engage in forum shopping.[6]

Plaintiff's position also finds no support in Precision Companies. In that case, the question before the court was whether § 3730(b)(5)'s intervention bar prevents joinder of closely related parties under Federal Rule of Civil Procedure 15 or forbids only intervention by unrelated parties under Federal Rule of Civil Procedure 24. The court held that the intervention prong of the first-to-file bar does not extend to joinder. The court did not, however, address whether the same relator could bring successive related qui tam actions. Plaintiff's cited cases are simply not on point.

Accordingly, the Court concludes that the first-to-file bar applies to successive related actions brought by the same relator.

---

[6] The Fifth Circuit concluded that "[relators'] attempts at forum shopping constitute the opportunistic and parasitic behavior the FCA seeks to preclude" and thus permitted the relators to pursue only one FCA action. Bailey, 609 F.3d at 721 n. 3.

**B.   The 2007 Lawsuit Was Pending when Relator Brought this Action**

Plaintiff next argues that, "[e]ven if this Court concludes that the first-to-file bar applies to the same relator, the bar still does not apply because Verizon I was not 'pending' when the Second Amended Complaint was filed." Opposition at 9. Plaintiff contends that "[t]he plain language of the first-to-file bar should control here" and that "[t]here is no doubt that Verizon I was no longer pending when Shea filed his amended complaints." Id. at 16 (emphasis added).

Turning again to the plain language of the statute, it is clear that the first-to-file bar refers specifically to jurisdictional facts that exist when an "action" is brought. Section 3730(b)(5) provides that a qui tam plaintiff may not "bring a related action based on the facts underlying the pending action." § 3730(b)(5) (emphasis added). As the Seventh Circuit noted when analyzing the text of the first-to-file bar, "[o]ne 'brings' an action by commencing suit." Chovanec, 606 F.3d at 362 (emphasis added); see also Black's Law Dictionary (9th ed. 2009) (defining "bring an action" as "[t]o sue" or "institute legal proceedings") (emphasis added).

This interpretation of the statute is consistent with the fundamental rule that "the jurisdiction of the court depends upon the state of things at the time of the action brought."

Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004) (internal quotation marks omitted). The amendment process "cannot be used to create jurisdiction retroactively where it did not previously exist." U.S. ex rel. Jamison v. McKesson Corp., 649 F.3d 322, 328 (5th Cir. 2011) (internal quotation marks omitted). Accordingly, the relevant inquiry turns on when a successive action is commenced, not when a complaint is amended. See U.S. ex rel. Branch Consultants, L.L.C., v. Allstate Ins. Co., 782 F. Supp. 2d 248, 259 (E.D. La. 2011) ("The use of the term 'action' in [§§ 3730(b)(5) and (e)(4)(b)] indicates that the Court should look to the jurisdictional facts that existed at the time the action was filed, as opposed to facts that existed when the relator later filed an amended complaint.").

Plaintiff commenced Verizon II on June 5, 2009. [Dkt. No. 1]. At that time, Verizon I was an active lawsuit, and was not dismissed until February 28, 2011. See [Verizon I Dkt. No. 41]. Therefore, Verizon I was pending when Plaintiff brought this current action.

**C. This Action Is Related to the 2007 Lawsuit**

The only question left is whether Verizon I and Verizon II are related actions. Plaintiff argues that Verizon I and Verizon II are not related because Verizon II alleges that Verizon committed fraud on contracts and agencies not at issue in

-13-

Verizon I. Opposition at 17. Plaintiff contends that "[t]he different contracts, different U.S. agencies, and different surcharges make Verizon II materially distinct from Verizon I." Id. at 19.[7]

Section 3730(b)(5) serves to bar "'actions alleging the same material elements of fraud' as an earlier suit, even if the allegations [of the later-filed complaint] 'incorporate somewhat different details.'" Hampton, 318 F.3d at 217 (quoting U.S. ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1189 (9th Cir. 2001)) (emphasis added). In adopting this "material elements" standard, our Court of Appeals rejected "another possible test, one barring claims based on 'identical facts.'" Hampton, 318 F.3d at 218. "Acknowledging that there is no bright line rule for determining whether differences between complaints are 'material,' the D.C. Circuit held that § 3730(b)(5) bars a subsequent action if it contains 'merely variations' of the fraudulent scheme described in the first action." U.S. ex rel.

---

[7] Plaintiff contends that the United States supports its position on this relatedness issue, citing to a Statement of Interest that the United States filed on May 24, 2010 in a different case. Opposition at 24-25. This contention has no merit. As noted, supra, on October 25, 2012, the United States filed a Statement of Interest in this case, taking no position as to the merits of the issues presented here. See Statement of Interest [Dkt. No. 56]. The United States simply requested that "if the Court dismisses this action, that such dismissal be without prejudice to the United States." Id. at 4.

-14-

Folliard v. CDW Tech. Services Inc., 722 F. Supp. 2d 37, 39-40 (D.D.C. 2010) (quoting Hampton, 318 F.3d at 218).

In this Circuit, the relevant inquiry is "whether the [later-filed] [c]omplaint alleges a fraudulent scheme the government already would be equipped to investigate based on the [earlier-filed] [c]omplaint." Batiste, 659 F.3d at 1209. Accordingly, complaints are related where the earlier-filed complaint gives the government sufficient notice to discover the fraud in the later-filed complaint. See U.S. ex rel. Folliard v. Synnex Corp., 798 F. Supp. 2d 66, 73 (D.D.C. 2011); CDW, 722 F. Supp. 2d at 43.

When evaluating a § 3730(b)(5) first-to-file motion to dismiss, "'[t]he only evidence needed to determine if a complaint is barred . . . is the complaints themselves.'" Synnex, 798 F. Supp. 2d at 72 (quoting U.S. ex rel. Ortega v. Columbia Healthcare, Inc., 240 F. Supp. 2d 8, 15 (D.D.C. 2003)). "Hampton . . . counsels that this Court must compare [the complaints] at a sufficiently high level of generality[.]" CDW, 722 F. Supp. 2d at 41.

In this litigation, a comparison of the 2007 Complaint in Verizon I with the Second Amended Complaint in Verizon II clearly demonstrates that the allegations in Verizon II are based on the same material facts alleged in Verizon I. Both complaints allege: (1) that Relator discovered that Verizon had

-15-

a custom and practice of billing clients for certain surcharges based on his experience as a private telecommunications consultant, see 2007 Complaint ¶ 12 and SAC ¶ 3; (2) that in 2004 Relator received an MCI document indicating that Verizon was charging the U.S. government for certain surcharges, see 2007 Complaint ¶ 70 and SAC ¶ 4; (3) that Verizon did not have a separate billing system for the U.S. government and commercial customers, see 2007 Complaint ¶ 81 and SAC ¶ 27; (4) that Verizon was prohibited from charging the U.S. government for these particular surcharges under the Federal Acquisition Regulations ("FAR") and the provisions of the contracts, see 2007 Complaint ¶¶ 4, 20 and SAC ¶¶ 17-26, 29; and (5) that Verizon did bill the U.S. government for certain non-allowable surcharges on telecommunications contracts. See 2007 Complaint ¶¶ 2, 4 and SAC ¶ 1.

Plaintiff's argument that his two lawsuits are not related because they involve different contracts with different agencies has no merit. In fact, Plaintiff concedes that "[t]wo D.C. district courts have held that complaints which allege similar fraudulent schemes on different contracts with different federal agencies do not materially differ under the first-to-file rule." Id. at 20; see Synnex, 798 F. Supp. 2d at 73 ("[T]he fact that [Relator] alleges that defendants made false claims to different agencies under different contracts does not mean that the

complaints incorporate different material elements."); CDW, 722 F. Supp. 2d at 41 (rejecting the argument that "the different procurement contracts and contracting agencies are relevant" to a determination of similarity "as the text of § 3730 and the statute's underlying policies do not support the creation of a distinction between the two complaints on this basis.").

The side-by-side comparison of the complaints has persuaded the Court that, although the complaints allege "somewhat different details" (which is not surprising), Plaintiff's 2007 Complaint in Verizon I "suffices to put the U.S. government on notice" as to Verizon's allegedly fraudulent billing practices with respect to surcharges on government contracts, and that the Second Amended Complaint in Verizon II "alleges the same material elements of the same fraud." Batiste, 659 F.3d at 1208-09.

Accordingly, Plaintiff's action is "based on the facts underlying" his previously filed qui tam action in 2007, and it is therefore barred under § 3730(b)(5).

**IV. CONCLUSION**

Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth in this Memorandum Opinion, Defendants' Motion to Dismiss is **granted** for

lack of jurisdiction as to Relator and **granted without prejudice** as to the United States.



November 15, 2012                    /s/_____
                                    Gladys Kessler
                                    United States District Judge



<u>Copies to</u>: attorneys on record via ECF