# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *EX REL.* STEPHEN M. SHEA | |
| -and- | |
| STEPHEN M. SHEA, | No. 1:09-cv-01050-GK |
| Plaintiffs, | |
| v. | |
| VERIZON BUSINESS NETWORK SERVICES, INC.; VERIZON FEDERAL INC.; MCI COMMUNICATIONS SERVICES, INC. d/b/a VERIZON BUSINESS SERVICES; and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | Pretrial Conference: Not Yet Scheduled |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

## DEFENDANTS' RENEWED MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Verizon Business Network Services Inc., Verizon Federal Inc., MCI Communications Services, Inc. d/b/a Verizon Business Services, and Cellco Partnership d/b/a Verizon Wireless respectfully move to dismiss Relator's Second Amended Complaint and this action. Defendants seek dismissal with prejudice on the following grounds: (1) the action is foreclosed by the "public disclosure" bar of 31 U.S.C. § 3730(e)(4) and (2) the Second Amended Complaint fails to satisfy the requirements of Federal Rules of Civil Procedure 8 and 9(b); Defendants seek dismissal of the action without prejudice on the following ground: (3) the action is barred by 31 U.S.C. § 3730(b)(5), which provides that "[w]hen a person brings an action under this subsection, no person other than the

Government may intervene or bring a related action based on the facts underlying the pending

action."

Pursuant to Local Civil Rule 7(f), Defendants request that the Court schedule an oral

hearing on this motion.


Dated: July 31, 2015                    Respectfully submitted,

                                        /s/ Jonathan G. Cedarbaum
                                        _____
                                        Jonathan G. Cedarbaum (D.C. Bar No.
                                        483768)
                                        WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                        1875 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20006
                                        Tel.: (202) 663-6315
                                        Fax: (202) 663-6363
                                        Jonathan.Cedarbaum@wilmerhale.com

                                        *Attorney for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
*EX REL.* STEPHEN M. SHEA

-and-

STEPHEN M. SHEA,

          Plaintiffs,

      v.

VERIZON BUSINESS NETWORK SERVICES,
INC.; VERIZON FEDERAL INC.;
MCI COMMUNICATIONS SERVICES, INC.
d/b/a VERIZON BUSINESS SERVICES; and
CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS,

         Defendants.

No. 1:09-cv-01050-GK

Pretrial Conference:  Not Yet Scheduled

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
## RENEWED MOTION TO DISMISS

Seth P. Waxman
Jonathan G. Cedarbaum
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
jonathan.cedarbaum@wilmerhale.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................5

ARGUMENT ...................................................................................................................13

I.     THE FCA'S PUBLIC DISCLOSURE BAR REQUIRES DISMISSAL WITH
       PREJUDICE ...........................................................................................................13

       A.    The Public Disclosure Bar ........................................................................13

       B.    The Public Disclosure Bar Forecloses Relator's Claims Because They Are
             Based On Publicly Available Contract And Billing Information .............15

             1.    Relator's Information Regarding The Content Of The
                    Contracts Comes From The Internet...............................................16

             2.    Relator's Information Regarding The Content Of The
                    Invoices That Allegedly Contain Impermissible Charges Is
                    From The Internet ...........................................................................17

             3.    Material Available On Public Internet Sites Is Publicly
                    Available ........................................................................................19

       C.    Any Purportedly Non-Public Information Relied Upon By Relator Was
              Merely Cumulative ....................................................................................19

       D.    Relator Is Not An Original Source.............................................................22

II.    THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH
       PREJUDICE FOR FAILING TO SATISFY RULES 8 AND 9(B) ......................24

       A.    The Second Amended Complaint Fails To Demonstrate That The Named
             Contracts Prohibited The Surcharges.........................................................24

       B.    The Second Amended Complaint Lacks Allegations Sufficient To
             Demonstrate That Any Improper Billings Actually Occurred..................28

       C.    The Second Amended Complaint Fails To Identify *When* The Allegedly
             Fraudulent Claims Were Made .................................................................30

       D.    The Second Amended Complaint Fails To Identify With Particularity *Who*
             Made The Allegedly Fraudulent Statements Or Claims ...........................31

       E.    Because Relator Lacks Sufficient Information To State His Claims With
             Particularity, Dismissal Should Be With Prejudice ..................................32

i

III.    IN THE ALTERNATIVE, THIS ACTION MUST STILL BE DISMISSED
        UNDER THE FIRST-TO-FILE BAR ...................................................................35

        A.    The Supreme Court's Decision Leaves Undisturbed The D.C. Circuit's
              Affirmance of This Court's Determination That The Action Must Be
              Dismissed ..................................................................................................35

        B.    It Is The Action, Not the Second Amended Complaint, That Should Be
              Dismissed ..................................................................................................36

CONCLUSION...........................................................................................................................38

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acosta Orellana v. CropLife International*,
        711 F. Supp. 2d 81 (D.D.C. 2010) ...............................................................3334

*Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ...................................................................................3, 29

*Benjamin v. United States*,
        833 F.3d 669 (7th Cir. 1987) ...........................................................................37

*Boone v. MountainMade Foundation*,
        684 F. Supp. 2d 1 (D.D.C. 2010) ......................................................................3

*Ciralsky v. CIA*,
        355 F.3d 661 (D.C. Cir. 2004) .........................................................................37

*Coalition for Underground Expansion v. Mineta*,
        333 F.3d 193 (D.C. Cir. 2003) .........................................................................16

*Chattanooga-Hamilton County Hospital Authority v. United States*,
        No. 15-96, 2015 WL 4464703 (U.S. July 20, 2015)........................................20

*De Tie v. Orange County*,
        152 F.3d 1109 (9th Cir. 1998) .........................................................................37

*Ebeid ex rel. United States v. Lungwitz*,
        616 F.3d 993 (9th Cir. 2010) ...........................................................................33

*Graham County Soil and Water Conservation District v. United States ex rel.*
        *Wilson*,
        130 S. Ct. 1396 (2010) ..............................................................................14, 23

*Harrison v. Westinghouse Savannah River Co.*,
        176 F.3d 776 (4th Cir. 1999) ...........................................................................34

*Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*,
        135 S. Ct. 1970 (2015).........................................................1, 4, 12, 34, 36, 38

*Kowal v. MCI Communications Corp.*,
        16 F.3d 1271 (D.C. Cir. 1994).....................................................................33, 34

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
        131 S. Ct. 1885 (2011).........................................................................14, 19, 23

iii

*Trippe Manufacturing Co. v. American Power Conversion Corp.*,
  46 F.3d 624 (7th Cir. 1995) ..................................................................37

*United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*,
  251 F. Supp. 2d 28 (D.D.C. 2003) ........................................................31

*United States ex rel. Bender v. North American Telecommunications, Inc.*,
  499 F. App'x 44 (D.C. Cir. 2013) .........................................................33

*United States ex rel. Bender v. North American Telecommunications, Inc.*,
  686 F. Supp. 2d 46 (D.D.C. 2010) ........................................................31

*United States ex rel. Brown v. Walt Disney World Co.*,
  No. 6:06-cv-1943-Orl-22KRS, 2008 WL 2561975 (M.D. Fla. June 24,
  2008) ....................................................................................................19

*United States ex rel. Carter v. Halliburton Co.*,
  19 F. Supp. 3d 655 (E.D. Va. 2014) ......................................................38

*United States ex rel. Carter v. Halliburton Co.*,
  710 F.3d 171 (4th Cir. 2013), *aff'd in part, rev'd in part sub nom. Kellogg
  Brown & Root Services, Inc. v. United States ex rel. Carter*, 135 S. Ct.
  1970 (2015)......................................................................................36, 38

*United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*,
  606 F.3d 361 (7th Cir. 2010) ................................................................38

*United States ex rel. Clausen v. Laboratory Corp. of America*,
  290 F.3d 1301 (11th Cir. 2002) ............................................................33

*United States ex rel. Davis v. District of Columbia*,
  679 F.3d 832 (D.C. Cir. 2012) .........................................................14,  22

*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Services, Inc.*,
  778 F. Supp. 2d 37 (D.D.C. 2011) ........................................................31

*United States ex rel. Eisenstein v. City of New York*,
  556 U.S. 928 (2009)..........................................................................33, 34

*United States ex rel. Findley v. FPC-Boron Employees' Club*,
  105 F.3d 675 (D.C. Cir. 1997)...............................................................24

*United States ex rel. Gagne v. City of Worcester*,
  565 F.3d 40 (1st Cir. 2009)...................................................................33

*United States ex rel. Green v. Service Contract Education & Training Trust Fund*,
  843 F. Supp. 2d 20 (D.D.C. 2012) ...........................................14, 16, 19, 23

iv

*United States. ex rel. Harris v. Dialysis Corp. of America*,
    No. CIV. JKB-09-2457, 2013 WL 5505400 (D. Md. Oct. 1, 2013)................................37

*United States ex rel. Head v. Kane Co.*,
    798 F. Supp. 2d 186 (D.D.C. 2011) ............................................................24, 25, 29, 30

*United States ex rel. Heath v. AT & T, Inc.*,
    No. 14-7094, 2015 WL 3852180 (D.C. Cir. June 23, 2015) ............................................29

*United States ex rel. J. Cooper & Associates, Inc. v. Bernard Hodes Group, Inc.*,
    422 F. Supp. 2d 225 (D.D.C. 2006).........................................................................14, 21

*United States ex rel. Joshi v. St. Luke's Hospital, Inc.*,
    441 F.3d 552 (8th Cir. 2006) ...................................................................................33, 34

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital*,
    360 F.3d 220 (1st Cir. 2004), *abrogated on other grounds by United States
    ex rel. Gagne v. City of Worcester*, 565 F.3d 40 (1st Cir. 2009) ................................33, 34

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
    No. CIV-92-1282 SVW, 2000 WL 33775399 (C.D. Cal. Jan. 20, 2000),
    *aff'd*, 243 F.3d 1181 (9th Cir. 2001) ...............................................................................37

*United States ex rel. Oliver v. Philip Morris USA, 763 F. 3d 36, 38 n.2 (D.C. Cir.
    2014)* ...............................................................................................................14, 20, 23

*United States ex. rel. Oliver v. Phillip Morris USA, Inc.*,
    No. 08-0034(CKK), 2015 WL 1941578 (D.D.C. Apr. 30, 2015).....................................19

*United States ex rel. Russell v. Epic Healthcare Management Group*,
    193 F.3d 304 (5th Cir. 1999), *abrogated on other grounds by United
    States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009)............................33, 34

*United States ex rel. Settlemire v. District of Columbia*,
    198 F.3d 913 (D.C. Cir. 1999) ........................................................................................15

*United States ex rel. Shea v. Cellco Partnership*,
    135 S. Ct. 2376 (2015)....................................................................................................12

*United States ex rel. Shea v. Cellco Partnership*,
    748 F.3d 338 (D.C. Cir. 2014), *vacated by*, 135 S. Ct. 2376 (2015) .............1, 4, 12, 34, 35

*United States ex rel. Springfield Terminal Railway Co. v. Quinn*,
    14 F.3d 645 (D.C. Cir. 1994)....................................................................14, 15, 20, 21, 22

*United States ex rel. Unite Here v. Cintas Corp.*,
    No. C 06-2413 PJH, 2007 WL 4557788 (N.D. Cal. Dec. 21, 2007) ................................19

*United States ex rel. Vuyyuru v. Jadhav*,
    555 F.3d 337 (4th Cir. 2009) ...........................................................................14

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
    389 F.3d 1251 (D.C. Cir. 2004) ...............................................................30, 31

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ...........................................................................33

*United States v. Science Applications International Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010) .......................................................................32

## STATUTES, RULES, AND REGULATIONS

48 C.F.R.
    § 52.229-4(b) ....................................................................................................28

31 U.S.C.
    § 3730(b)(2) .....................................................................................................34
    § 3730(b)(5) ..........................................................................................4, 35, 36
    § 3730(d) ..........................................................................................................33
    § 3730(e)(4) ....................................................................2, 13, 16, 22, 33, 34

S. Rep. No. 99-345 (1986), as *reprinted in* 1986 U.S.C.C.A.N. 5266 .........................................32

Fed. R. Civ. P.
    Rule 4(m) ....................................................................................... 37Rule 12(d)    16

## INTRODUCTION

In 2012, Defendants moved to dismiss this *qui tam* False Claims Act (FCA) suit on three grounds: (i) the first-to-file bar, (ii) the public disclosure bar, and (iii) failure to satisfy the pleading requirements of Federal Rules of Civil Procedure 8 and 9(b).  Dkt. No. 49.  This Court correctly dismissed the case under the first-to-file bar, but did not address the other two grounds for dismissal.  Dkt. No. 58.  The D.C. Circuit affirmed.  *United States ex rel. Shea v. Cellco P'ship*, 748 F.3d 338 (D.C. Cir. 2014).  Relator Stephen M. Shea (Relator) filed a petition for certiorari, contending that dismissal should have been without prejudice rather than with.  In another case, *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015), the Supreme Court recently determined that in the circumstances presented here dismissal under the first-to-file bar should indeed be without prejudice, and so the case has returned to this Court.

Defendants now renew their motion to dismiss on each of the three grounds previously presented to this Court, two of which warrant dismissal *with* prejudice.

Relator alleges that Defendants Verizon Business Network Services, Inc., Verizon Federal Inc., and MCI Communications Services, Inc. d/b/a Verizon Business Services (collectively, Verizon) and Defendant Cellco Partnership d/b/a Verizon Wireless (Verizon Wireless) improperly billed the government for certain taxes and surcharges that purportedly were not permitted under certain contracts.  This case is a near carbon copy of the suit Relator filed against Verizon in this Court in 2007.  In that case (*Verizon I*), Relator alleged that Verizon had improperly billed taxes and surcharges under two related contracts that allegedly permitted recovery only of certain specified charges.  Relator claimed in *Verizon I* to have gained knowledge of Verizon's allegedly improper billing from his work as a telecommunications

1

consultant and from a leaked document.  The case settled without an admission of liability after the government intervened.  Mem. Op. 2 (Dkt. No. 58).

In the present action (*Verizon II*), Relator brings no new information to bear.  He merely reasserts the allegations from *Verizon I* and claims they also apply to 20 additional Verizon and Verizon Wireless contracts whose names he located on the Internet.  Relator does not make particularized allegations about what taxes and surcharges are permitted by those additional contracts or whether Defendants in fact billed for such taxes and surcharges.  Instead, he simply assumes, "on information and belief," that because Defendants allegedly billed improperly for taxes and surcharges under the contracts at issue in *Verizon I*, the same is true for 20 other of Defendants' contracts.  Thus, as this Court concluded, "the allegations in *Verizon II* are based on the same material facts alleged in *Verizon I*."  Mem. Op. 15 (Dkt. No. 58).  The United States has not intervened in the present action.

Three independently sufficient grounds warrant dismissal of this case.

*First*, this action should be dismissed with prejudice under the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4).  Section 3730(e)(4) requires dismissal of a *qui tam* action where the material elements of the allegation of fraud were previously "publicly disclosed" in certain specified sources—including court filings and in the media—unless the relator is an "original source" of the information disclosed.  The "material elements" of Relator's allegations in this case are that (1) 20 Verizon contracts disallowed certain surcharges and (2) Verizon invoiced the government for those surcharges.  Relator concedes that he found the information that allegedly demonstrates those material elements—certain "chunks" of contract language and "mock-up billing and billing presentations"—on the Internet.  *See* Shea Dep., Cedarbaum Decl., Ex. 1, 152:18-153:2; *see also, e.g.*, Shea Dep. 21:12-17; 25:4-7; 40:16-41:5; 51:5-8; 53:21-54:2; 55:14-

2

15; 56:7-21; 59:1-3; 62:15-16; 100:17-21; 104:1-2; 106:11-13; 108:7-8; 109:12-15; 110:2-3;

113:1-3; 119:9-17; 120:2-7; 127:4-6; 137:9-10; 142:9-16; 147:12-13.  Relator, moreover, was

not an "original source" of any of the relevant information.  As a result, this action is foreclosed

under the "public disclosure" bar, and must be dismissed with prejudice.

*Second*, the case should be dismissed with prejudice because Relator has not—and

cannot—meet the pleading requirements of Federal Rules of Civil Procedure 8 and 9(b).  Under

Rule 8, conclusory assertions are insufficient; supporting facts demonstrating that the claim is

more plausible than other possibilities must be alleged.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S.

662, 677 (2009).  And under Rule 9(b)—applicable to FCA claims—a plaintiff must plead with

particularity details regarding the "who, what, when, where and how" of the fraud.  *Boone v.*

*MountainMade Found.*, 684 F. Supp. 2d 1, 8 (D.D.C. 2010).  Relator's Second Amended

Complaint satisfies neither standard.

The Second Amended Complaint does not plead facts sufficient to show that the

contracts at issue prohibited the billing practices alleged.  While the Second Amended Complaint

alleges that Defendants fraudulently billed the United States on 20 separate contracts, it does not

identify a single contractual provision that Verizon allegedly violated.  Indeed, Relator concedes

that he has not even read many of the contracts at issue and has reviewed only "chunks" of

others.  *See, e.g.*, Shea Dep. 117:1-3 ("I have not read every single one of these contracts in their

entirety because I don't have them."); *id.* at 28:12-14, 18-20; 34:4-5; 40:20-21; 51:5-6; 100:20-

21; 104:7-8; 106:18-19.  For 18 of the 20 contracts, the Second Amended Complaint does not set

forth any terms or conditions; for another, the Second Amended Complaint quotes operative

contractual language, but that language itself makes clear that certain types of surcharges were

permitted; and, for the last, the Second Amended Complaint merely quotes language from

3

various modifications to the contract (but not the contract itself), none of which supports Relator's claims.

Nor does the Second Amended Complaint provide any particularized allegations regarding the purportedly fraudulent claims. The Second Amended Complaint does not identify any *particular* surcharge that was allegedly billed in violation of any *particular* contractual term or condition. It does not identify a single invoice containing a prohibited tax or surcharge. It does not allege even a general time frame for the purported fraud, and it does not identify anyone allegedly involved in the purported fraud. And since it lacks allegations providing any "particularity" regarding these essential elements of a fraud claim, the Second Amended Complaint cannot stand. Because Relator's deposition makes clear that he lacks sufficient information to state his alleged claims with particularity, and because he has already had two opportunities to amend, dismissal *with* prejudice is called for.

*Third*, if the Court declines to dismiss the case under either of the first two grounds offered, it must at least dismiss this action *without* prejudice under the first-to-file bar, 31 U.S.C. § 3730(b)(5). This Court already held that the first-to-file bar applies to successive actions by the same relator, that this action and *Verizon I* are "related actions," and that *Verizon I* was pending when this action was filed. Mem. Op. 9-16 (Dkt. 58). The D.C. Circuit affirmed each of those determinations, *Shea*, 748 F.3d at 341-43, and the Supreme Court's decision in *Kellogg Brown & Root Services* left them untouched. The only revision *Kellogg Brown & Root Services* requires is that the dismissal be changed from one *with* prejudice to one *without*. Furthermore, the dismissal without prejudice must be of the action, not merely of the Second Amended Complaint. The plain terms of the first-to-file bar, it purposes, and the logic of *Kellogg Brown & Root Services* require as much. Relator cannot be permitted simply to file a Third Amended

4

Complaint following first-to-file bar dismissal.  If he wishes to continue to pursue Verizon in that circumstance, he would need to file a new action.

Relator's role under the FCA should have been finished when *Verizon I* was settled and he obtained a substantial reward for having notified the government that Verizon was allegedly improperly billing certain taxes and surcharges.  The decision whether to pursue a related action along the lines of the one Relator now asserts—an action that simply seeks to extend previously disclosed theories of fraud to *publicly identifiable* contracts—is for the government alone to make.  Verizon emphatically disputes that it has engaged in the fraud Relator alleges.  But if the government were for some reason to reach a contrary conclusion, it no doubt could and would take action to seek to protect its interests.  This case should be dismissed with prejudice.

## BACKGROUND

### *Verizon I*

Relator filed his first *qui tam* complaint against Verizon on January 17, 2007.  *See* Cedarbaum Decl., Ex. 2 (Civ. No. 1:07-cv-0111(GK) (Dkt. 1)) (hereinafter "*Verizon I* Compl.").  The 2007 complaint explained that the "action concern[ed] the knowing submission to the United States of certain prohibited surcharges under contracts to provide telecommunications services between defendant Verizon Communications Inc. (and its division Verizon Business) and the General Services Administration."  *Verizon I* Compl. ¶ 2.  Relator claimed that he "discovered the false and fraudulent claims that are at issue in [*Verizon I*] through his extensive work as a private telecommunications consultant to Fortune 100 companies including reviewing invoices to ensure that the vendors ha[d] correctly implemented the negotiated contracts."  *Id.* ¶ 12.  The complaint alleged that "[d]uring the course of this work for private clients, Relator Shea became aware of the practice of MCI billing corporate clients not only for federal, state and local taxes levied on the customer but also for surcharges (often labeled as, or lumped together

5

with, taxes) that were added to bills by MCI to inflate the revenue it received for telecommunication services." *Id.* Relator then claimed he "learned that MCI was attempting to pass on the same surcharges to the United States under its FTS2001 Contract even though Federal Acquisition Regulations (FAR) and the terms of the FTS2001 Contract precluded such surcharges." *Id.* ¶ 13. The complaint also alleged that Verizon continued MCI's billing practices after the 2006 merger between MCI and Verizon. *See id.* ¶ 69.[1]

Specifically, the complaint alleged that "[o]n or about August 13, 2004, Relator Shea received an MCI document that purported to show 'the taxes and surcharges that the Federal Government is responsible for.'" *Id.* ¶ 70.[2] The complaint alleged that "MCI appear[ed] to have been invoicing the United States in the same way it invoiced many of its commercial clients notwithstanding the terms of the FTS2001 Contract and governing FAR regulations," *id.* ¶ 79, and that "MCI used the same billing platform that it used for enterprise [or corporate] customers to bill the United States without modifying its systems to reflect the terms of the FTS2001 Contract," *id.* ¶ 80. Similarly, the complaint alleged that "Verizon Business also uses the same billing platform that it uses for its business customers to bill the United States without modifying its systems to reflect the terms of the FTS2001 Contract or the FTS2001 Bridge Contract." *Id.*

---

[1] Verizon Communications Inc., the parent company initially named in this action, was formed on June 30, 2000, with the merger of Bell Atlantic Corp. and GTE Corp. *See* http://www22.verizon.com/investor/corporatehistory.htm. As the Second Amended Complaint acknowledges, Verizon did not acquire MCI (which had previously been named Worldcom) until 2006. *See* SAC ¶¶ 3, 6. Verizon also has numerous subsidiaries that predate the merger. *See, e.g., id.* ¶ 6 (listing subsidiaries). At the time the Second Amended Complaint was filed, it was also a majority owner of Cellco Partnership, which operates as Verizon Wireless. *See id.* ¶ 10. The other co-owner of Cellco Partnership was Vodafone, a British telecommunications company. *Id.* On February 21,2014, Verizon completed the acquisition of Vodafone's interest and Cellco is now an indirect wholly-owned subsidiary of Verizon.

[2] The document allegedly showed that MCI billed the government the following charges: "Federal Regulatory Fee surcharges, state sales, excise and utility taxes; and surcharges based on the following state and local fees, contributions and taxes assessed on the carrier: public utility commission fees, state universal service fund and high cost fund contributions; state 'deaf taxes;' state and local gross receipts taxes; business license fees; 911 taxes; tele-relay service charges; ad valorem taxes; business, occupational and franchise taxes." *Id.* ¶ 71.

¶ 81.  Relator pointed to multiple specific provisions of the FTS2001 and FTS2001 Bridge Contracts that he claimed disallowed the charges, *id.* ¶¶ 30-45, along with particular aspects of the "Cost Proposal" for those agreements, *id.* ¶¶ 46-61, which he claimed demonstrated that Verizon's imposition of surcharges was improper under the terms of the contracts.

The United States intervened in *Verizon I*, and the parties reached a settlement agreement in February 2011 that did not include any admission of liability.  Mem. Op. 2 (Dkt. No. 58). *Verizon I* was dismissed on February 28, 2011.  *Id.*

**Relator's Initial *Verizon II* Complaint**

While *Verizon I* remained pending, Relator filed the current case (*Verizon II*).  Relator filed *Verizon II* as a "related case" to *Verizon I*.  *See* Compl. ¶ 7 (Dkt. No. 1) ("In 2007, Relator Stephen Shea filed a related action, Civ. Action No. 07CV0111 (GK) …."); Civil Cover Sheet (Dkt. No. 1-1) (marking related case box).  Relator himself acknowledges that "a lot of the issues are the same" in his two lawsuits.  Shea Dep. 150:5-6.  Like the *Verizon I* complaint, Relator's original *Verizon II* complaint alleged that Verizon "knowingly submits claims to the United States for payment of illegal surcharges under contracts to provide telecommunication services." *Verizon II* Compl. ¶ 2; *cf. Verizon I* Compl. ¶ 2.

Just as in the *Verizon I* complaint, Relator claimed in his original *Verizon II* complaint that he "discovered the false and fraudulent claims that are at issue in this case through his extensive work as a private telecommunications consultant to Fortune 100 companies including reviewing invoices to ensure that the vendors ha[d] correctly implemented the negotiated contracts."  *Verizon II* Compl. ¶ 22; *cf. Verizon I* Compl. ¶ 12.  The original *Verizon II* complaint also repeated the allegation from the *Verizon I* complaint that "[d]uring the course of this work for private clients, Relator Shea became aware of the practice of MCI billing corporate clients

not only for federal, state and local taxes levied on the customer but also for surcharges (often labeled as, or lumped together with, taxes) that were added to bills by Verizon to inflate the revenue it received for telecommunications services." *Verizon II* Compl. ¶ 22; *cf. Verizon I* Compl. ¶ 12. Like the *Verizon I* complaint, the original *Verizon II* complaint then alleged that Relator "learned that MCI was attempting to pass on the same illegal surcharges, designated as "'federal, state and local taxes,' 'fees,' 'surcharges,' or 'tax-like surcharges' and other similar names to the United States," *Verizon II* Compl. ¶ 23, and that Verizon allegedly was doing the same, *see id.* ¶ 24; *cf. Verizon I* Compl. ¶ 13.

In the original *Verizon II* complaint, Relator identified the same source of his supposed insider knowledge: "On or about August 13, 2004, Relator Shea received an MCI document that purported to show 'the taxes and surcharges that the Federal Government is responsible for.'" *Verizon II* Compl. ¶ 52; *cf. Verizon I* Compl. ¶ 70.[3] The *Verizon II* complaint also then alleged that "Verizon is invoicing the United States in the same way that it invoices many of its business customers notwithstanding the governing FARs or applicable contracts," *Verizon II* Compl. ¶ 80; *cf. Verizon I* Compl. ¶ 79, and again alleged that "Verizon uses the same billing systems that it uses for its business customers to bill the United States without modifying these systems to reflect the terms of the contracts with the United States or the FARs," *Verizon II* Compl. ¶ 80; *cf. Verizon I* Compl. ¶¶ 80-81.

Relator made no attempt in *Verizon II* to distinguish the theory or circumstances of fraud that he asserted in the *Verizon I*. Indeed, Relator explicitly connected the two complaints under a single theory of fraud, stating that *Verizon II* "alleges that Verizon's pattern and practice of submitting false claims extends beyond the FTS2001 and FTS2001 Bridge Contract." *Verizon II*

---

[3] The document allegedly showed that MCI billed the Government for the same taxes and surcharges alleged in the *Verizon I*. *See Verizon II* Compl. ¶ 53; *cf. Verizon I* Compl. ¶ 71.

Compl. ¶ 15.  Relator asserted that his allegations of fraud applied to "multiple contracts including, but not limited to, the contracts for wireless services including WITS2001 administered by GSA, the Metropolitan Area Acquisition (MAA) contract administered by GSA, and contracts held by the Department of Defense, the United States Postal Service, the United States House of Representatives and the United States Senate, and other federal agencies."  *Id*.

In November 2011, the United States informed this Court that it was "not intervening at this time" in *Verizon II*.  *See* Notice Of The United States That It Is Not Intervening At This Time (Dkt. No. 26).

**Relator's Second Amended *Verizon II* Complaint**

Although original *Verizon II* complaint was unsealed on March 29, 2012, Relator did not serve that complaint.  Instead, Relator filed a First Amended Complaint almost four months later and over three years after the initial complaint had been filed.  On September 12, 2012, Relator filed a Second Amended Complaint (SAC) that is substantively identical to the First Amended Complaint but (at Defendants' request) substitutes three Verizon subsidiaries in place of Verizon Communications Inc.[4]  Like the initial complaint in this action, the Second Amended Complaint acknowledges that this suit is "related" to *Verizon I* (SAC ¶ 5) and attempts to extend the allegations from Relator's now-settled *Verizon I* to additional Verizon government contracts.

Like the prior complaints, the Second Amended Complaint alleges that Relator discovered the purported fraud while "consulting with large commercial telecommunications customers."  SAC ¶ 3; *cf. Verizon II* Compl. ¶ 22; *Verizon I* Compl. ¶ 12.  It alleges that as a consultant, Relator "learned that most telecommunication carriers, including Worldcom, later named MCI Communications Corp., acquired by Verizon in 2006 (collectively 'MCI/Verizon'),

---

[4] *See* Stipulation Regarding Amended Complaint 3 (Dkt. No. 48).

had a custom and practice of charging" certain taxes and surcharges.  SAC ¶ 3; *cf. Verizon II Compl.* ¶ 22; *Verizon I* Compl. ¶ 12.[5]  The Second Amended Complaint then alleges that "MCI/Verizon overcharged the United States, just like its commercial customers."  SAC ¶ 4; *see also id.* ¶ 27; *Verizon II* Compl. ¶ 24; *Verizon I* Compl. ¶ 13.

Specifically, the Second Amended Complaint—like the prior complaints—alleges the source of Relator's purported insider knowledge:  "In 2004, Shea received an MCI document indicating that the company was charging the government for regulatory fee surcharges, and various state taxes, including utility taxes, ad valorem/property taxes, and business, occupational, and franchise taxes."  SAC ¶ 4; *cf. Verizon II* Compl. ¶ 52; *Verizon I* Compl. ¶ 70.  The Second Amended Complaint further alleges—again like the prior complaints, but this time referencing an unnamed "former Verizon employee"—that "Verizon did not have a separate billing system for federal customers and commercial customers."  SAC ¶ 27; *cf. Verizon II* Compl. ¶ 80; *Verizon I* Compl. ¶¶ 80-81.  In the Second Amended Complaint, Relator then asserts that his allegations apply not only to the FTS2001 and FTS2001 Bridge Contracts, but also to 20 additional contracts between Defendants and the United States—each of which is listed on publicly accessible websites.  The only facts Relator provides about these 20 contracts, however, he admitted he gleaned from the Internet.  *See* Shea Dep. 152:18-153:2; *see also, e.g.*, Shea Dep. 21:12-17; 25:4-7; 40:16-41:5; 51:5-8; 53:21-54:2; 55:14-15; 56:7-21; 59:1-3; 62:15-16; 100:17-21; 104:1-2; 106:11-13; 108:7-8; 109:12-15; 110:2-3; 113:1-3; 119:9-17; 120:2-7; 127:4-6; 137:9-10; 142:9-16; 147:12-13.

---

[5] The taxes and surcharges alleged to have been improperly billed are described as:  "'Federal, State and local taxes,' 'fees,' 'surcharges,' 'tax-like surcharges' (and similar names), state and local 911 charges, state service universal service funds, public utility commission fees, Federal Regulatory Fees/Common Carrier Recovery Charges ('CCRC'), Federal Universal Service Charges, ad valorem/property taxes, and business, occupational, and franchise taxes."  SAC ¶ 3.  Assuming its own conclusion, the Second Amended Complaint calls these charges "Non-Allowable Tax-Like Charges."  *Id.*

Beyond the general allegation that Defendants committed fraud with respect to each agreement, the Second Amended Complaint provides no specific allegations supporting Relator's claims.  Notably, the Second Amended Complaint does not contain allegations supporting the claim that any particular contract at issue prohibited passing along any particular surcharge that Verizon allegedly charged the government.  Other than listing them by name, the Second Amended Complaint provides no specifics at all for 17 of the 20 contracts at issue.[6] Although Relator's claims depend on the notion that the listed contracts prohibited Defendants from imposing certain surcharges on the government, the Second Amended Complaint does not even set forth or describe the operative contractual provisions for almost all of the 20 listed contracts.  *Cf.* Shea Dep. 44:22-45:3 (Relator agrees that "different contracts have different surcharge provisions").  In fact, Relator admits that he does not know this information at this stage, and instead hopes to rely on discovery to construct his case.  *See* Shea Dep. 192:19-22 ("I don't know what I don't know.  But … when we see the documents and the invoicing we're going to know."); *id.* at 34:4-6 ("Again, I haven't read and seen every -- every single full whole contract.  And I'm -- I'm anticipating to see that.").  As to the couple of listed agreements for which the Second Amended Complaint refers to relevant contractual language—which Relator never read in their entirety, *see, e.g.*, *id.* at 117:1-3; 122:11-14; 142:9-11—the allegations do not support Relator's claims.  *See* SAC ¶¶ 30, 32-40.  Moreover, the Second Amended Complaint does not even set forth the general time frame for Relator's allegations, much less identify the specific time of each purportedly false claim.  Nor does the Second Amended Complaint contain any allegations regarding the amounts of the allegedly false claims or the particular

---

[6] Indeed, Relator readily admits that he has not even read many of the contracts at issue or has reviewed only "chunks" of them that he obtained on the Internet.  *See, e.g.*, Shea Dep. 28:12-14; 34:4-5; 40:20-21; 51:5-6; 100:20-21; 104:7-8; 106:18-19; 117:1-3; *see also* Cedarbaum Decl., Ex. 3 (Verizon Federal Contract User Guide).

circumstances of the claims.  The Second Amended Complaint does not make allegations regarding any particular person asserted to be involved in the purported fraud or provide any detail regarding the alleged fraudulent scheme.

**Subsequent Procedural History**

On September 12, 2012, Defendants moved to dismiss on three grounds:  (i) the first-to-file bar, (ii) the public-disclosure bar, and (iii) Rules 8(a) and 9(b).  The Court dismissed the case with prejudice under the first-to-file bar and did not address the public-disclosure bar or Rules 8(a) and 9(b).  Mem. Op. 18 (Dkt. No. 58); Order (Dkt. No. 57).  Relator sought clarification as to whether dismissal was with or without prejudice.  Dkt No. 59.  The Court explained that no clarification was needed and that the dismissal was with prejudice.  Order (Dkt. No. 63).  The D.C. Circuit affirmed.  *United States ex rel. Shea v. Cellco P'ship*, 748 F.3d 338, 343-344 (D.C. Cir. 2014).  Shea filed a petition for a writ of certiorari.  On June 1, 2015, the Supreme Court issued an order vacating the D.C. Circuit's judgment and remanding the case for further proceedings in light of its decision in *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015).  *See United States ex rel. Shea v. Cellco P'ship*, 135 S. Ct. 2376 (2015).  The Supreme Court's ruling in *Kellogg Brown & Root Services* rejected the portion of the D.C. Circuit's reasoning that had affirmed this Court's determination that dismissal under the first-to-file bar should be *with* prejudice.  *Compare Shea*, 748 F.3d at 343-344 (D.C. Cir. 2014), *with Kellogg*, 135 S. Ct. 1970.  Defendants filed a motion in the D.C. Circuit requesting supplemental briefing on the two alternative grounds for affirmance the D.C. Circuit had not addressed:  the public-disclosure bar and failure to satisfy Rules 8 and Rule 9(b).  The D.C. Circuit denied the motion on July 17, 2015, and remanded to this Court for further proceedings consistent with *Kellogg Brown & Root Services*.

## ARGUMENT

### I.   THE FCA'S PUBLIC DISCLOSURE BAR REQUIRES DISMISSAL WITH PREJUDICE

The Second Amended Complaint should be dismissed with prejudice under the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4).  To the extent Relator adds anything to the allegations in this action beyond what was in his *Verizon I* complaint, he relies on information that was publicly available on the Internet, which is where Relator admits he found it.  That Relator may have relied on his previous consulting experiences to understand that public material is of no moment, because it is well settled in this Circuit that merely applying expertise to publicly available facts is insufficient to overcome the public disclosure bar.

### A.   The Public Disclosure Bar

The public disclosure bar prevents a relator—but not the government—from pursuing an action that rests on allegations that were previously "publicly disclosed" in specified sources unless the relator is an "original source" of the information disclosed.  At the time this action was filed, the bar provided:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2009).[7]

A *qui tam* action is barred if it is "based upon" or "substantially similar" to allegations or transactions disclosed in any of the FCA's enumerated sources.  *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012).  If the suit is based upon public disclosures, the bar "prevents suits by those other than an 'original source' when the government already has enough information to investigate the case and to make a decision whether to prosecute, or where the information could at least have alerted law-enforcement authorities to the likelihood of wrongdoing."  *Id.* (internal quotation marks omitted).  Congress thus sought to achieve "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own."  *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994).

The public disclosure bar forecloses *qui tam* actions "where all of the material elements of the fraudulent transaction are already in the public domain" and the relator merely "comes forward with additional evidence" that cumulatively adds to information already in the public domain.  *Id.* at 655.  The bar therefore "precludes suits by individuals who base *any part* of their allegations on publicly disclosed information."  *United States ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes Grp., Inc.*, 422 F. Supp. 2d 225, 235 n.10 (D.D.C. 2006) (internal quotation marks omitted); *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 351–52 (4th Cir. 2009)

---

[7] Congress amended the public disclosure bar in the Patient Protection and Affordable Care Act (PPACA), which was signed into law on March 23, 2010.  PPACA's amendments do not apply retroactively to cases pending at the time of enactment  *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 n.1 (2011); *Graham Cnty. Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 130 S. Ct. 1396, 1400 n.1 (2010); *United States ex rel. Oliver v. Philip Morris USA*, 763 F. 3d 36, 38 n.2 (D.C. Cir. 2014); *United States ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*, 843 F. Supp. 2d 20, 29 n.7 (D.D.C. 2012).  In any event, as explained below, the outcome of this case would be the same under either version of the bar.

("Section 3730(e)(4)(A)'s public disclosure jurisdictional bar encompasses actions even partly based upon prior public disclosures.").  It is not necessary that "the relevant public disclosures irrefutably prove a case of fraud[;] [i]t is sufficient that the publicly disclosed transaction is sufficient to raise the inference of fraud."  *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999) (internal quotation marks, citation omitted).

Furthermore, the D.C. Circuit has made clear that the relator cannot overcome the public disclosure bar simply by using his "expertise" to make allegations of fraud based on publicly disclosed facts.  *Springfield Terminal Ry. Co.,* 14. F.3d at 655 (using "[e]xpertise" in a given field to deduce that a fraud has been committed does "not in itself give a *qui tam* plaintiff the basis for suit when all the material elements of fraud are publicly available, though not readily comprehensible to nonexperts").  Indeed, a *qui tam* is barred where the relator merely possesses "background information which enables [him or her] to understand the significance of a publicly disclosed transaction or allegation."  *Id.* (citation and internal quotation marks omitted).

**B.**     **The Public Disclosure Bar Forecloses Relator's Claims Because They Are Based On Publicly Available Contract And Billing Information**

The public disclosure bar squarely forecloses this action.  The claims in the Second Amended Complaint rest on two material elements: (1) that 20 contracts between Verizon and various government entities disallowed certain surcharges, and (2) that Verizon invoiced the government for these surcharges.  *See* SAC ¶ 28 ("Verizon improperly billed for Non-Allowable Tax-Like Charges on the following federal telecommunication contracts ….").  As discussed in Part II *infra*, both of these allegations are wholly conclusory and insufficient because Relator fails to identify which surcharges Verizon actually invoiced to the government or any provisions within the 20 contracts that disallow them.  But the allegations also fail at the outset because Relator admits that even the conclusory information he possesses about the 20 named contracts

15

and the contents of invoices that allegedly contain impermissible charges was publicly available. He found all this information on the Internet.

### 1. Relator's Information Regarding The Content Of The Contracts Comes From The Internet

As explained in more detail below, *see infra* pp. 25-32, for 17 of the 20 contracts, Relator pleads only the contract name and number and literally nothing at all about the content of the contract. *See* SAC ¶ 28. Relator (or anyone else) could identify these contract names and numbers simply by searching publicly available websites,[8] and Relator admitted that he compiled his list from just such websites. *See* Shea Dep. 21:12-17 ("Most of these from this specific list came from a contract—a document on Verizon—I believe it was Verizon's website[.]"); *id.* 151:18-153:4 & Ex. 2 (source of contract descriptions, which Relator found online).[9] As for the three contracts for which Relator sets forth minimal specifics other than the contract name and number, that information also can be found on the Internet, as Relator also admitted:

| Paragraph(s) | Contract | Allegation / Source |
|---|---|---|
| ¶ 29 | FEMA Contract No. HSFEHQ-04-D-0023 | Relator pleads that the contract allegedly "did not mention Non-Allowable Tax-Like Charges," a statement that, even if true, does not allege that the contract's language disallows any particular surcharge. |

---

[8] *See, e.g.*, Cedarbaum Decl. ¶ 4 & Ex. 3 (online Verizon Federal Contract User Guide) (identifying by name and number the contracts named in SAC ¶¶ 28(a), 28(b), 28(c), 28(f), 28(h), 28(i), 28(j), 28(k), 25(l), & 28(m)); *id.* ¶ 7 & Ex. 6 (DoD website) (identifying by name and number the contract named in ¶ 28(e)); *id.* ¶ 8 & Ex. 7 (FedBixOpps.com website) (identifying by name and number the contract named in ¶ 28(g)); *id.* ¶ 9 & Ex. 8 (online Verizon GSA Schedule Program) (identifying by name and number the contract named in ¶ 28(d)).

[9] It is appropriate for the Court to consider evidence outside the pleadings in evaluating this aspect of Defendants' motion. The public disclosure bar affects the jurisdiction of the Court. *See* 31 U.S.C. § 3730(e)(4) (2009). In considering a motion to dismiss for lack of subject matter jurisdiction, courts routinely rely on a factual record. *See, e.g.*, *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (noting that the Court could resolve factual questions in considering a motion to dismiss for lack of subject matter jurisdiction); *United States ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*, 843 F. Supp. 2d 20, 37 n.11 (D.D.C. 2012) (considering relator's declaration in support of his jurisdictional argument under the public disclosure bar). Indeed, even if the bar were not jurisdictional, the Court could consider evidence on this issue. *See* Fed. R. Civ. P. 12(d).

16

| Paragraph(s) | Contract | Allegation / Source |
|---|---|---|
| | | Because Relator does not plead any actual contractual language, he effectively has done nothing more than identify the contract itself, which is information that Relator asserted can be found on Verizon's website.  In his deposition, Relator could not recall having ever seen this contract but admitted that he found the contract number and description on the Internet.[10] |
| ¶ 30 | WITS 3 Contract No. GS11T08BJD6001 | Relator quotes Sections H.16 and H.27 of the contract. Relator admitted that he found this contract language on the Internet.[11] |
| ¶¶ 32-40 | Verizon Wireless Federal Supply Schedule, Contract No. GS-35F-0119P | Relator quotes from modifications 7, 8, 12, 18, and 20 to the contract.  Relator admitted that he found on the Internet all of the modifications to this contract that he possesses.[12] |

Because Relator obtained the facts that he alleges regarding the contracts on the Internet

(Verizon's website or government websites or other publicly available websites, *see* Shea Dep.

21:21:-22:10), this information was publicly disclosed.

> **2.      Relator's Information Regarding The Content Of The Invoices That Allegedly Contain Impermissible Charges Is From The Internet**

Although Relator does not plead any specific facts regarding Verizon's invoices, he

admitted that what he knows about which allegedly impermissible surcharges were actually

---

[10] *See* Shea Dep. 113:1-3 ("I found this one, that contract number, on a description kind of a – on Verizon's website"); 116:7-9( "Do you think you have a copy of this contract?  I'm not sure."); 113:22-114:4 ("Do you know if you have a copy of it? Again, I have – I have lots of copies of chunks of these contracts.  This one on FEMA, again, I don't have any instant recall.").

[11] Shea Dep. 120:6-7 ("Where did you get it?  Most likely online.")

[12] Shea Dep. 127:12-13; 137:9-10; 142:4-16.

charged on Verizon's invoices was also gleaned from the Internet.[13]  For some contracts, Relator

was able to find online what he described as "mock-up invoicing" or "training invoices," which

in some cases contained a section on taxes and surcharges.[14]

For example, Relator explained in his deposition that "with a lot of these things, you can

find these [mock-up invoices] by taking the contract number…and you just stick them in

Google."  Shea Dep. 47:2-4.  He explained that these billing "mock-ups" are not the "actual

billing" but do include the "billing format," *id.* at 47:14-16, and a "section on taxes and

surcharges," *id.* at 47:22-48:1.  Relator remembered "vividly" seeing tax and surcharge

provisions in one of the 20 contracts, *id.* at 53:7-12, and recalled or thought he recalled "mock-

up" bills for six other contracts, *id.* at 48:5-10; 55:16-19; 63:5-9, 103:18-22, 109:16-110:1;

124:6-10, which he claimed "provide[d] [him] with enough information to know what surcharges

are charged [on the relevant contract]," *id.* at 55:20-56:6.

That the documents that Relator admits he found on the Internet do not appear to be

actual Verizon invoices is of no moment.  What matters is that, according to Relator, information

regarding which surcharges Verizon charged to government customers can be found on the

Internet.  They are thus publicly disclosed for the purposes of the public disclosure bar.

---

[13] In his deposition, Relator stated that, in addition to what he found on the Internet, he "got a
sample bill of a wireless, like, a Blackberry device from someone on the Judiciary Committee."
Shea Dep. 127:13-16.  However, Relator conceded that the only surcharges shown on this bill—
the Federal Universal Service Charge and Regulatory Charge—were the very ones that the
contract modification language quoted in his Second Amended Complaint indicates were
permitted to be charged under the Wireless Schedule, and that he was aware of no contract or
modification language that disallowed these charges.  *See* Shea Dep. 129:1-14; 131:1-10;
133:15-136:1.  Accordingly, this Wireless Schedule invoice does not support the allegations in
the Second Amended Complaint that Verizon charges impermissible surcharges, and it thus is
irrelevant to the public disclosure bar analysis.

[14] Shea Dep. 46:11-16; 47:22-48:1; 48:10; 50:6-8; *see also id.* at 53:16-54:2 (describing an
online mock-up bill for the contract named in SAC ¶ 28(e)); 55:16-56:21 (describing same as to
contract named in ¶ 28(f)).

### 3.      Material Available On Public Internet Sites Is Publicly Available

Websites that are available to the general public are "news media" for purposes of the

public disclosure bar.  *United States ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*,

843 F. Supp. 2d 20, 32 (D.D.C. 2012).[15]  In *Green*, the Court dismissed a lawsuit where "the fact

that the defendant contractors had service contracts with federal agencies is readily available on

the Internet" via a labor union's website.  *Id.* at 31.  The Court noted that the public disclosure

bar is given "a broad sweep," *id*. at 32 (quoting *Schindler Elevator*, 131 S. Ct. at 1891), and it

concluded that the key consideration is the "ready accessibility" of the information, and not

whether the website is a news source in the traditional sense, *Green*, 843 F. Supp. 2d at 33; *see

also United States ex rel. Oliver v. Phillip Morris USA, Inc.*, No. 08-0034(CKK), 2015 WL

1941578, at *8 (D.D.C. Apr. 30, 2015) (government agency websites considered published by

the "new media," because "the purpose of those pages was clearly to give the public an accurate

account of those entities' contracting requirements"); *United States ex rel. Brown v. Walt Disney

World Co*., No. 6:06-cv-1943-Orl-22KRS, 2008 WL 2561975, at *4 (M.D. Fla. June 24, 2008)

(Wikipedia qualifies as "news media"); *United States ex rel. Unite Here v. Cintas Corp*., No. C

06-2413 PJH, 2007 WL 4557788, at *14 (N.D. Cal. Dec. 21, 2007) (finding that "[t]he 'fact' of

the contracts between [defendant] and the federal government was publicly disclosed in the news

media, as that information was available on the Internet").

### C.      Any Purportedly Non-Public Information Relied Upon By Relator Was Merely Cumulative

As explained above, the elements of Relator's claims have been publicly disclosed.

Although Relator has alleged very little regarding the content of the 20 contracts at issue, what

he describes about them can be—and in fact was—found on the Internet.  Similarly, although he

---

[15] PPACA did not alter the "news media" disclosure provision.

has alleged very little regarding the content of Verizon's invoices, what he knows about specific allegedly impermissible charges on the contracts at issue in this action he found on the Internet.

Relator cannot avoid the public disclosure bar by pointing to the limited other information he cites as the basis for his allegations, because it adds only cumulative information to the "essential elements" of his allegations that were already publicly disclosed.  As the D.C. Circuit has explained, where the material elements of an allegation have been publicly disclosed, the case is barred where the Relator merely "comes forward with additional evidence." *Springfield Terminal Ry. Co.,* 14 F.3d at 655.  The only specific facts Relator has identified as the basis for his current suit that he does not admit he found on the Internet are (1) an MCI document Relator says he received in 2004, *see* SAC ¶ 4, and (2) the contention that Verizon does not have a separate billing system for federal and commercial customers and that its "billing system do[es] not have the capability to turn off the surcharges that were generally charged to all customers," *see id.* ¶ 27.  This information is simply "additional evidence" supporting the material elements of Relator's allegations. [16]

---

[16] The *Verizon I* complaint also qualifies as public disclosure relevant to these allegations.  The *Verizon I* complaint was unsealed in 2011 (*see* Order, No. 1:07-cv-00111, Dkt. No. 56, Civ. No. 1:07-cv-00111), long before Relator filed or served the Second Amended Complaint (or filed the First Amended Complaint).  It was only in the Amended Complaints that Relator identified 17 of the contracts that he contends involved improper billing and added allegations concerning post-March 23, 2010 conduct.  Thus, at least as to those new allegations in the Second Amended Complaint—including those seeking to suggest that the 2004 document implies that Verizon was improperly billing for taxes on those contracts and was doing so after March 23, 2010—the unsealed *Verizon I* complaint qualifies as a public disclosure.

Because the *Verizon I* complaint was under seal at the time the original *Verizon II* complaint was filed in 2009, Relator may argue that the *Verizon I* complaint cannot qualify as a public disclosure at all.  Verizon acknowledges that the D.C. Circuit has held that disclosure to the government by itself does not suffice to constitute public disclosure for these purposes, *see United States ex rel. Oliver v. Philip Morris USA Inc*., 763 F.3d 36, 42 (D.C. Cir. 2014), and that, under that rule, a complaint *while under seal* does not constitute a qualifying public disclosure.  Some Circuits take a different view, and so Verizon preserves its argument on this score.  *See* Petition for Writ of Certiorari, *Chattanooga-Hamilton County Hosp. Authority v. United States*, No. 15-96, (U.S. July 20, 2015), 2015 WL 4464703 (presenting question whether disclosure to "outsiders" is required for information to be considered "public").

The 2004 document lists taxes and surcharges, but Relator admits that these taxes and surcharges are not charged on all of the 20 contracts at issue. Shea Dep. 165:6-14 ("Some of them will be [charged on the 20 contracts], some of them won't be. It's going to vary depending on what the services are. It's going to vary on where the services are provided. It's going to vary on, you know, the billing platform."); *id.* at 170:10-12 ("[S]ome of these charges aren't going to appear on some of the services under some of the contracts"). Accordingly, the 2004 document adds little to the billing information Relator found on the Internet in preparing his case. The knowledge about Verizon's billing system from a former Verizon employee, SAC ¶ 27, is similarly cumulative of—and less specific than—the information Relator located on the Internet. Indeed, Relator conceded that Verizon has multiple billing systems, Shea Dep. 195:9-14, that the Verizon employee did not indicate which billing system he was referring to, *id.* at 195:15-20; 212:7-9, and that Verizon does in fact have the capability to turn off surcharges or to credit back surcharges or use other work-arounds in order to avoid charging surcharges to particular customers, *id.* at 227:17-231:2. Against this backdrop, Relator's purported "inside" information about Verizon's billing systems is at most "additional evidence" that is far from sufficient to avoid the public disclosure bar. *Springfield Terminal Ry.*, 14 F.3d at 655; *see also Bernard Hodes Grp.*, 422 F. Supp. 2d at 235 n.10 (bar "precludes suits by individuals who base *any part* of their allegations on publicly disclosed information").

Finally, Relator cannot avoid the public disclosure bar by pointing generally to his industry experience and claiming that it allowed him to recognize the significance of the publicly disclosed contract and billing information. In his deposition, when asked for the source of allegations against Defendants, Relator referred repeatedly to what he had learned through his years as a consultant on telecommunications contracts—none of which were federal government

contracts, let alone any of the contracts named in this suit—and at one point referred to this knowledge as the "special sauce" that allowed him to make sense of the "salt and pepper" that "everybody knows."[17]  The D.C. Circuit has clearly held, however, that such "expertise" is not sufficient to surmount the public disclosure bar.  *See Springfield Terminal Ry.*, 14 F.3d at 655 ("[T]here may be situations in which all of the critical elements of fraud have been publicly disclosed, but in a form not readily accessible to most people, *i.e.*, engineering blueprints on file with a public agency.  Expertise in the field of engineering would not in itself give a *qui tam* plaintiff the basis for suit when all the material elements of fraud are publicly available, though not readily comprehensible to nonexperts.").

**D.    Relator Is Not An Original Source**

Because Relator's new allegations are "based upon" publicly disclosed materials found on the Internet, his lawsuit "can proceed only if he is an 'original source.'"  *Davis*, 679 F.3d at 837.  Relator, however, is obviously not an "original source" of the contract and billing information about the 20 listed contracts that he found on the Internet.  To be an original source, the then applicable statute required that Relator have "direct and independent knowledge of" that information.  31 U.S.C. § 3730(e)(4)(B) (2009).  Relator clearly cannot meet this standard. "Direct signifies marked by absence of an intervening agency," and "[i]ndependent knowledge is knowledge that is not itself dependent on the public disclosure."  *Springfield Terminal Ry. Co.*, 14 F.3d at 656 (internal citations and quotation marks omitted).  The D.C. Circuit has held "this definition to impose a conjunctive requirement—direct *and* independent—on *qui tam* plaintiffs." *Id.* (emphasis in original).  Relator admitted that he did not have "independent" or "direct"

---

[17] Shea Dep. 70:17-71:1; *see also, e.g.*, *id.* at 137:12-13 ("Again, a lot of my knowledge in terms of what this stuff is from my industry stuff."); *id.* at 23:17-18 (explaining how "industry knowledge" helps him understand the bills and contracts); *id.* at 34:21-35:2 (stating that his "industry experience" leads him to expect that "there's going to be a whole heck of a lot of charges that are not allowable").

access to Defendants' contracts and bills; all he saw were "chunks" of contracts and "mock-up" bills that he found on publicly available sources such as the Internet.

Relator would not be an "original source" even under PPACA's amended definition of the term.[18]  Relator could not have "voluntarily disclosed" the information that he has about the contracts or invoices to the government "prior to" the "public disclosure" of that information on the Internet, 31 U.S.C. § 3730(e)(4)(B) (2012), since he admitted he found it on the Internet.[19] Furthermore, he does not bring any additional information that is "independent of and materially adds to the publicly disclosed allegations or transactions," because—as discussed above—the only other information on which Relator bases his lawsuit is cumulative.  Relator has never been an employee of Verizon or a consultant to a federal government agency with respect to a Verizon contract, Shea Dep. 16:3-11; 20:2-9, and he does not claim to have had direct access to Verizon's contracts or invoices.  To the contrary, Relator claims to have applied "expertise" he gained as a commercial consultant to publicly disclosed information about Verizon, which is insufficient. "If a relator merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot

---

[18] Relator's Second Amended Complaint asserts separate causes of action for conduct occurring before and after the date of enactment of PPACA, suggesting that PPACA's amendments apply to claims submitted after its enactment. *But see supra* n. 7 (noting that PPACA does not apply retroactively to cases pending on the date of enactment).  Even if PPACA did apply to conduct after March 23, 2010, it would not affect the outcome of this motion.

After PPACA, § 3730(e)(4)(B) provides:

> For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

[19] *See, e.g.*, Shea Dep. 21:12-17; 25:4-7; 40:16-41:5; 51:5-8; 53:21-54:2; 55:14-15; 56:7-8; 59:1-3; 62:15-16; 100:19-21; 104:1-2; 106:11-13; 108:7-8; 109:12-15; 110:2-3; 113:1-3; 119:9-17; 120:2-7; 127:4-6; 137:9-13; 142:9-16; 147:12-13.

proceed." *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997).

For all of these reasons, this follow-on action by Relator—which does no more than assert conclusory allegations regarding material he admits is available on the Internet—is foreclosed by the FCA's public disclosure" bar.

## II.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE FOR FAILING TO SATISFY RULES 8 AND 9(B)

The Second Amended Complaint should also be dismissed because it fails the pleading requirements of Federal Rule of Civil Procedure 8, much less the heightened pleading requirements of Rule 9(b).  The Second Amended Complaint lists 20 Verizon government contracts by name and number and states "on information and belief" that Verizon improperly billed certain surcharges under the contracts.  SAC ¶ 28.  But whether surcharges can be billed to the government depends on the contract in question, and the Second Amended Complaint does not allege that any *particular* surcharge was prohibited under any *particular* contract.  Nor does the Second Amended Complaint offer any particularized allegations regarding the purportedly fraudulent charges submitted by Defendants, including what they were for, when and by whom they were submitted, and what contract provision they purportedly violated.  As explained below, the Second Amended Complaint is deficient in numerous respects.

### A.   The Second Amended Complaint Fails To Demonstrate That The Named Contracts Prohibited The Surcharges

The Second Amended Complaint alleges that "Verizon improperly bill[ed] for Non-Allowable Tax-Like Charges"[20] on 20 of its contracts with the federal Government.  SAC ¶ 28. But the Second Amended Complaint provides no support for its conclusory assertion that the

---

[20] *See* SAC ¶ 3 (defining "Non-Allowable Tax-Like Charges"); *see supra* note 5.

specified charges were not permitted under the 20 contracts at issue.  It recognizes that whether a particular tax or surcharge may be billed to the Government turns on the particular terms of each contract and that those terms vary between contracts.  *See, e.g.,* SAC ¶¶ 17, 22-23 (articulating the differences between a "firm-fixed-price contract[]" (¶ 17) and a contract that "excludes Federal, State, and local taxes and duties from the contract price" (¶¶ 22-23)); *id.* ¶ 29 (alleging merely that "*many*" of the 20 listed contracts "never discussed Non-Allowable Tax-Like Charges" (emphasis added)); *id.* ¶ 30 (conceding that some of the 20 listed contracts "specifically excluded certain surcharges from the list price," and thus permitted those surcharges to be billed in addition to the list price).  Therefore, for this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011), and in order to allege "the circumstances constituting fraud," *id.*, Relator would need to plead facts sufficient to demonstrate a *particular* surcharge was barred under a *particular* contract and that the Government was fraudulently billed for that surcharge.

Relator's *Verizon I* complaint set forth with specificity the provisions of the contracts at issue.  *See Verizon I* Compl. ¶¶ 28-64.  The complaint acknowledged that the contracts permitted certain surcharges while prohibiting others.  *See id.* ¶ 66 ("The Federal Universal Service Fund surcharge, the PICC surcharge, and certain other taxes were acceptable line item charges under the FTS2001 Contract."); *id.* ¶ 67 ("No other surcharges were to be included as separate line items on the invoices under the FTS2001 Contract.").  In contrast to the 2007 *Verizon I* complaint, the Second Amended Complaint in the present action contains almost no description of the contractual provisions at issue.  The Second Amended Complaint does not provide *any information at all* about 17 of the 20 named contracts (beyond contract name and number).  And

for the other three, it provides only minimal allegations that are insufficient to show improper billing by Defendants:

*First,* as to Verizon's contract with the Federal Emergency Management Agency (FEMA), the Second Amended Complaint includes only a single sentence stating simply that the contract "did not mention Non-Allowable Tax-Like Charges."  SAC ¶ 29.  But the fact that the FEMA contract purportedly is *silent* on the issue of surcharges does not demonstrate that any particular surcharge was prohibited.

*Second*, the Second Amended Complaint concedes that Verizon's WITS3 Contract "specifically excluded certain surcharges from the list price, like the Federal Universal Service Charge," permitting them to be charged separately.  SAC ¶ 30.  The Second Amended Complaint thus alleges only that Verizon "mischaracterized" the Federal Universal Service Charge as a "mandatory tax."  But the purported mischaracterization is not alleged to have been in some bill or charge or any other statement submitted or drafted by Verizon; it is in the contract language itself, which Relator never alleges was drafted by Verizon—as opposed to by the Government.

*Third*, the Second Amended Complaint describes at length certain modifications to the "Verizon Wireless Federal Supply Schedule" contract.  *See* SAC ¶¶ 32-40.  But the Second Amended Complaint does not cite the operative provisions of the agreement that dictate whether Verizon may or may not impose surcharges nor otherwise allege facts showing that Verizon was prohibited from charging surcharges under the Wireless Schedule.

The allegations regarding the Verizon Wireless Federal Supply Schedule illustrate the deficiencies of Relator's pleading.  Rather than point to the specific contractual provisions that address whether and what surcharges can be billed, the Second Amended Complaint points to language from contract modifications to assert that Verizon misled the Government about the

26

nature of its surcharges.  The language cited, however, belies Relator's allegations.  For example, the Second Amended Complaint alleges that Modification 8 to the Wireless Schedule suggested that Verizon was "required" to bill the "Federal Universal Service" surcharge.  SAC ¶ 34.  But a few lines later, Modification 8 states: "*In addition to surcharges and fees that we are required to collect*, we will also collect charges to recover or help defray costs of taxes and governmental surcharges and fees imposed on us…. *These charges include*, among others, a Regulatory Charge and *a Federal Universal Service Charge*…" *Id.* (emphasis added).  Relator acknowledges the clarifying language but asserts (incorrectly) that it appears "[o]nly [in] the fine print" and that it is "in the second half of the modification." *Id.* ¶ 35.  The Second Amended Complaint then alleges—without further basis—that "Verizon's careful wordsmithing" in the modifications indicates that "Verizon knew [the surcharges] were not allowable charges under the contract." *Id.* ¶ 41.  But that allegation makes an unsubstantiated and conclusory logical leap, simply assuming that the charges were not allowable, while the Second Amended Complaint does not identify any contractual term in the Verizon Wireless Federal Supply Schedule that prohibits them.

Instead of pointing to the language of the contracts, Relator seeks to rely on various provisions of the Federal Acquisition Regulations (FAR).  *See* SAC ¶¶ 16-25.  But those provisions themselves make clear that it is the language of the contracts that ultimately governs whether charges are allowable.  Thus, Relator generally asserts that "[t]hese contracts incorporated FAR provisions which stated that 'the contract price includes all applicable Federal, State, and local taxes and duties,'" and that "Verizon had no basis for subsequently collecting surcharges under these contracts."  SAC ¶ 29.  But a mere seven paragraphs earlier in the Second Amended Complaint, Relator concedes that the application of the FAR provisions is dependent

27

on the particular terms of the contract. *Id.* ¶ 22; *see* 48 C.F.R. § 52.229-4(b) ("*Unless otherwise provided in th[e] contract*, the contract price includes all applicable Federal, State, and local taxes and duties." (emphasis added)).

Thus, the Second Amended Complaint fails to plead facts sufficient to determine which particular taxes and surcharges Relator contends were not permitted under each of the 20 listed contracts.

### B.   The Second Amended Complaint Lacks Allegations Sufficient To Demonstrate That Any Improper Billings Actually Occurred

Not only does the Second Amended Complaint fail to plead facts sufficient to demonstrate whether *particular* surcharges were prohibited under *particular* contracts, but it also fails to plead facts sufficient to show what particular surcharges were allegedly imposed on the Government under the particular contracts.  Relator does not allege knowledge of Verizon's billing practices with regard to the specific contracts named or over any particular time period. Instead, the Second Amended Complaint includes the conclusory allegation that, on "information and belief," "Verizon improperly billed … on the following federal telecommunication contracts."  SAC ¶ 28.

The sole basis set forth in the Second Amended Complaint for the conclusion that the taxes and surcharges it lists were billed under each of the listed contracts appears to be the allegation (1) that Relator learned from a former Verizon employee that Verizon allegedly "did not have a separate billing system for federal customers and commercial customers, and that Verizon's billing system did not have the capability to turn off the surcharges that were generally charged to all customers," SAC ¶ 27; and (2) that in 2004 Relator received an MCI document indicating that MCI was charging certain fees under an unspecified contract, *see id.* ¶ 4.  Those allegations, however, are insufficient to support the sweeping inference that each of the Verizon

28

companies that entered into the 20 contracts at issue in this case engaged in improper billing. Among other things, the allegations do not identify when Relator supposedly learned the information from the former employee, over what time period Defendants allegedly maintained the billing system described, for which contracts such a billing system was used, and what contract and what period of time the MCI document covered.  The Second Amended Complaint, for example, provides no basis to infer that alleged billing practices by old MCI, *see* SAC ¶ 3, affected any particular current Verizon entity or affiliate, such as Cellco Partnership, which, as the Second Amended Complaint notes, is a joint venture between Verizon and Vodafone (a British company) with no alleged connection to old MCI, *see, e.g.*, *id.* ¶ 6 (listing various Verizon subsidiaries), ¶ 10 (Cellco Partnership).  Without those details, there is an insufficient basis under Rule 9(b) to infer that the billing system purportedly described by the former employee supports Relator's allegations as to any particular contract at issue.

At bottom, the Second Amended Complaint consists of nothing more than generalized speculation that Defendants may have billed some *unspecified* non-allowed surcharges to the Government under *some* contracts over some *unspecified* period of time in some *unknown* amount.  But such a "possibility of misconduct" is insufficient to satisfy the pleading standards of Rule 8, let alone Rule 9(b).  *See Iqbal*, 556 U.S. at 678; *cf. Kane*, 798 F. Supp. 2d at 204 (finding pleadings adequate where the Relator and the Government detailed "the circumstances of the fraudulent scheme and the location, Kane Company executive-level meetings").

The D.C. Circuit's recent decision in *United States ex rel. Heath v. AT & T, Inc*., No. 14-7094, 2015 WL 3852180 (D.C. Cir. June 23, 2015) is not to the contrary.  *Heath* held that "the precise details of individual claims are not, as a categorical rule, an indispensable requirement of a viable False Claims Act complaint."  *Id.* at *12.  But the complaint must provide "'particular

29

details of a scheme to submit false claims paired with reliable indicia that lead to a strong

inference that claims were actually submitted.'" *Id*. Relator has done neither: the Second

Amended Complaint provides no particular details about the scheme as a whole, and alleges no

facts leading to the strong inference that the contracts at issue here involved fraudulent billing.

Relators are not always required "to plead representative samples of claims actually submitted to

the government," but here, Relator's claims lack the indicia of reliability and specificity to

warrant a "relaxed" approach to Rule 9(b). *Id.* (internal quotation marks omitted). To the

contrary, the law is clear that whether surcharges can be billed to the Government is a matter of

contract, and even the few contracts Relator cites makes clear that in practice Verizon's contracts

with the Government could and did vary on the subject. Nothing in the Second Amended

Complaint thus provides any indi1cia of what the balance of the contracts said with regard to the

inclusion of surcharges on the Government's bill, let alone that Verizon violated any of those

requirements.

> **C.    The Second Amended Complaint Fails To Identify *When* The Allegedly Fraudulent Claims Were Made**

Also absent from the Second Amended Complaint is any allegation identifying the time

period of the fraud. The D.C. Circuit has held that a *qui tam* complaint must be dismissed for

lack of particularity under Rule 9(b) if it fails to specify the start date or duration of the allegedly

fraudulent scheme. *See United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d

1251, 1257 (D.C. Cir. 2004) ("Several paragraphs nebulously allege that the period in question is

'at least through 2002,' but nowhere does the complaint allege a start date."). The Second

Amended Complaint is even more deficient than the one dismissed in *Williams*, for it lacks any

reference to any time period for any of the allegedly false billings. *See United States ex rel.*

*Bender v. N. Am. Telecomms., Inc*., 686 F. Supp. 2d 46, 51 (D.D.C. 2010) (dismissing complaint

that states when contract commenced but "contains no further details as to when the fraud began or for how long it existed"); *Kane*, 798 F. Supp. 2d at 204 (noting that the Government provided "a specific time period" and that even the Relator, who alleged "a more open-ended time-period," set forth the date the scheme allegedly began).  "While a complaint that covers a multi-year period may not be required by Rule 9(b) to contain a detailed allegation of all facts supporting *each and every instance* of submission of a false claim, *some information on the false claims* must be included."  *United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 28, 35 (D.D.C. 2003) (emphasis added).  Relator's complaint fails to specify even "any representative claims" from among untold numbers of claims.  *United States ex rel. Dig. Healthcare, Inc. v. Affiliated Comput. Servs., Inc.*, 778 F. Supp. 2d 37, 53 (D.D.C. 2011).

**D.**      **The Second Amended Complaint Fails To Identify With Particularity *Who* Made The Allegedly Fraudulent Statements Or Claims**

Finally, the Second Amended Complaint is deficient because it fails to "identify individuals allegedly involved in the fraud."  *Williams*, 389 F.3d at 1256; *see also Bender*, 686 F. Supp. 2d at 53 ("[False Claims Act] cases in this circuit reveal that specificity regarding the identities of individual actors is required." (internal citations omitted)).  The Second Amended Complaint does not mention a single individual who allegedly was involved with or had knowledge of the purported fraud.  *Cf. Kane*, 798 F. Supp. 2d at 204 (noting that both "Relator and the Government also specifically identify those Kane Company personnel involved in perpetrating the scheme").  Such "imprecise pleading" fails to give the defendant enough information to respond and "subjects it 'to vague, potentially damaging accusations of fraud,' which is precisely what Rule 9(b) seeks to avoid."  *Dig. Healthcare*, 778 F. Supp. 2d at 53 (quoting *Williams*, 389 F.3d at 1257).

31

Having failed to identify any individuals allegedly engaged in the fraud, it is no surprise that the Second Amended Complaint also fails adequately to allege scienter.  To state a claim under the FCA, a relator must show that the defendant acted with scienter—mere mistakes are insufficient.  *See, e.g., United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010) ("Congress clearly had no intention to turn the FCA, a law designed to punish and deter fraud, into a vehicle for either 'punish[ing] honest mistakes or incorrect claims submitted through mere negligence'…." (quoting S. Rep. No. 99-345 at 7 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5272).  While state of mind need not be pled with particularity under Rule 9(b), the Second Amended Complaint fails to satisfy even Rule 8 in this regard.  Scienter is a necessary element of an FCA claim, which requires more than simply the "collective knowledge" of a corporation.  *See Sci. Applications Int'l Corp.*, 626 F.3d at 1275 (rejecting "collective knowledge" theory of FCA scienter, which would have allowed "a plaintiff to prove scienter by piecing together scraps of 'innocent' knowledge held by various corporate officials"). The Second Amended Complaint, however, fails to allege any facts about who submitted the allegedly false claims to the Government, who knew about the allegedly impermissible surcharges, and whether those who submitted the claims knew about the contract language prohibiting those surcharges.

### E.     Because Relator Lacks Sufficient Information To State His Claims With Particularity, Dismissal Should Be With Prejudice

Under the circumstances here, Relator's failure to satisfy the pleading requirements of Rules 8 and 9(b), warrants dismissal with prejudice.  It is apparent from Relator's deposition that he lacks sufficient information to state his alleged claims with particularity.  Relator has not even read many of the contracts at issue and has seen only "chunks" of the others.  *See, e.g.*, Shea Dep. 117:1-3 ("I have not read every single one of these contracts in their entirety because I don't

have them."); *id.* at 28:12-14, 18-20; 34:4-5; 40:20-21; 51:5-6; 100:20-21; 104:7-8; 106:18-19.

The only way for Relator to add the specific allegations required would be to rely on discovery

materials obtained from Defendants.  It is well established, however, that a relator cannot use

materials obtained in discovery to cure pleading deficiencies in an FCA case.  *See United States*

*ex rel. Karvelas v. Melrose-Wakefield Hosp.,* 360 F.3d 220, 231 (1st Cir. 2004) ("[A] qui tam

relator may not present general allegations in lieu of the details of actual false claims in the hope

that such details will emerge through subsequent discovery."), *abrogated on other grounds by*

*United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40 (1st Cir. 2009); *see also United*

*States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008); *United*

*States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 559 (8th Cir. 2006); *United States ex*

*rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313-14 n.24 (11th Cir. 2002).[21]

The FCA represents a careful compromise.  It provides significant incentives for private

parties to file suit for false claims alleged to have been submitted to the Government, *see* 31

U.S.C. § 3730(d) (permitting awards of 15-30% of recovery plus fees and costs), but private

parties can bring suit only if they possess material *non-public* information that a false claim has

been submitted, *see United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304,

309 (5th Cir. 1999) ("[T]he False Claims Act grants a right of action to private citizens only if

---

[21] Nor can Shea avoid Rule 9(b) by pleading "on information and belief" and asserting that "'the necessary information lies within defendants' control.'"  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994).  To the contrary, "standards for pleading on information and belief must be construed consistent with the purposes of Rule 9(b), which attempts in part to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs."  *Id.* (brackets and internal quotation marks omitted); *cf. United States ex rel. Bender v. N. Am. Telecomm., Inc.*, 499 F. App'x 44, 45 (D.C. Cir. 2013) (relator could not plead "on information and belief" because his complaint failed to "provide[] the factual basis for the charges").  Indeed, other circuits have explained that it is particularly inappropriate to "further relax Rule 9(b) in the context of *qui tam* suits" because the FCA "grants a right of action to private citizens only if they have independently obtained knowledge of fraud."  *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308-09 (5th Cir. 1999), *abrogated on other grounds by United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928 (2009); *accord Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010); *Clausen*, 290 F.3d at 1314 n.25.

they have *independently obtained* knowledge of fraud." (emphasis added)), *abrogated on other grounds by United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009).  As noted above, a *qui tam* action by a private relator is barred if it is based on information that has already been "publicly disclosed" unless the relator is the "original source" of the information.  *See* 31 U.S.C. § 3730(e)(4).  Moreover, the Act mandates that a "copy of the complaint and *written disclosure of substantially all material evidence and information the person possesses* shall be served on the Government" at the time a complaint is filed.  31 U.S.C. § 3730(b)(2) (emphasis added).  Permitting a *qui tam* relator to cure pleading deficiencies based on information obtained in discovery would undermine these limitations.  *See Karvelas,* 360 F.3d at 231; *Joshi*, 441 F.3d at 560.

Prohibiting *qui tam* relators who have failed to meet 9(b)'s particularity requirement from using discovery to replead is necessary to fulfill the purpose of Rule 9(b).  As the D.C. Circuit has emphasized, one of Rule 9(b)'s principal purposes is to "'prevent[ ] the filing of a complaint as a pretext for the discovery of unknown wrongs.'"  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (citations omitted); *see also Karvelas,* 360 F.3d at 231 (noting ''[t]he reluctance of courts to permit qui tam relators to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a qui tam plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext to uncover unknown wrongs.'' (internal quotation marks, citation omitted)); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 97 n.17 (D.D.C. 2010); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  Especially where, as here, the Second Amended Complaint does not come close to satisfying Rule 9(b), dismissal with prejudice is required to prevent Relator from bypassing the

requirements of Rule 9(b) altogether by demanding discovery first and attempting to file a sufficient complaint later.

## III.   IN THE ALTERNATIVE, THIS ACTION MUST STILL BE DISMISSED UNDER THE FIRST-TO-FILE BAR

### A.   The Supreme Court's Decision Leaves Undisturbed The D.C. Circuit's Affirmance of This Court's Determination That The Action Must Be Dismissed

As noted earlier, this Court's earlier ruling on Verizon's motion to dismiss rejected several arguments that Relator advanced as to why the first-to-file  bar should not prevent him from filing this case and the D.C. Circuit affirmed that decision in full.  The Supreme Court's ruling in *Kellogg Brown & Root Services* left undisturbed the D.C. Circuit's determination affirming this Court's ruling that this action was properly dismissed based on the first-to-file bar. It simply rejected the reasoning supporting the conclusion reached by both this Court and the D.C. Circuit that dismissal should be *with prejudice*.  *Compare Shea*, 748 F.3d at 343-44, *with Kellogg Brown & Root Servs.*, 135 S. Ct. at 1978-79.  Thus, if this Court concludes that dismissal with prejudice under the public disclosure bar or Rules 8 and 9(b) is not warranted, it should still dismiss the action without prejudice under the first-to-file bar.

In its decision on Verizon's earlier motion to dismiss, this Court held that the first-to-file bar applies to successive related actions brought by the same relator.  Mem. Op. 9-11 (Dkt. No. 58).  The D.C. Circuit agreed.  *Shea*, 748 F.3d at 342-43.  Nothing in the Supreme Court's *Kellogg Brown & Root Services* decision calls that conclusion into question.  This Court determined that *Verizon I* and the current action are "related actions"  Mem. Op. 13-16 (Dkt. No. 58).  The D.C. Circuit agreed.  *Shea*, 748 F.3d at 341-42.  Nothing in *Kellogg Brown & Root Services* casts any doubt on that determination.  The Court also ruled that the determination of whether the first to file bar applies is made as of the filing of the action, not the filing of the

35

Second Amended Complaint.   Mem. Op. 12-13 (Dkt. No. 58).   Again, the D.C. Circuit affirmed,

and the Supreme Court did nothing to call that determination into question.   The only relevant

issue addressed in *Kellogg Brown & Root Services* was whether dismissal under the first-to-file

bar there should have been with or without prejudice.   The Court "agree[d] with the Fourth

Circuit that dismissal . . . with prejudice . . . was error."   *Id.*   It affirmed the Fourth Circuit's

decision to dismiss without prejudice a case in a posture similar to this one.   *United States ex rel.*

*Carter v. Halliburton Co.*, 710 F.3d 171, 183 (4th Cir. 2013), *aff'd in part, rev'd in part sub nom.*

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015).

The *Kellogg Brown & Root Services* decision thus indicates that dismissal of this case

without prejudice is the required course.

**B.      It Is The Action, Not the Second Amended Complaint, That Should Be
Dismissed**

The plain terms and purpose of the first-to-file bar require dismissal of the *action*, not just

the Second Amended Complaint.   The first-to-file bar states: "When a person brings an action

under this subsection, no person other than the Government may intervene or bring a related

*action* based on the facts underlying the pending action."   31 U.S.C. § 3730(b)(5).   As this Court

held in its original order, the determination of whether the bar applies depends on whether the

original action was still "pending" when the second action was filed, not on when a later

amended complaint was filed.   Order 12-13 (Dkt. No. 58).[22]   Thus, the bar requires dismissal of

the later action, not simply of a particular complaint.

---

[22] The D.C. Circuit recently held that the first-to-file bar is not jurisdictional.  *See United States
ex rel. Heath v. AT & T, Inc.*, No. 14-7094, 2015 WL 3852180 (D.C. Cir. June 23, 2015).  That
makes no difference to the proper outcome here, as the D.C. Circuit itself noted:  "Confronting
the jurisdictional question was not necessary in *Shea* because the only issue presented on appeal
was whether the district court properly dismissed the case as barred by the first-to-file rule.  Even
if the district court wrongly characterized its dismissal as jurisdictional, we could sustain that
judgment for failure to state a claim under Rule 12(b)(6)."  *Id.* at *5.

The D.C. Circuit has stressed the importance of keeping clear the distinction between dismissing a complaint and dismissing an action.  In *Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004), for example, the court explained that dismissal without prejudice of a complaint allows the plaintiff to amend his pleading and continue the litigation.  "The dismissal without prejudice of an action (or 'case'), by contrast, is a different matter."  *Id*. at 666.  Dismissal of a complaint without prejudice is generally not a final appealable order; dismissal without prejudice of an action is.  *Id*. at 668; *accord De Tie v. Orange Cnty*., 152 F.3d 1109, 1111 (9th Cir. 1998) ("*WMX Technologies* merely held that when a *complaint* is dismissed with leave to amend, the order is non-final and not appealable in the absence of a further order terminating the action. Here, however, De Tie's *action* was dismissed, as provided in Fed. R. Civ. P. 4(m). The dismissal of an action, even when it is without prejudice, is a final order."); *Trippe Mfg. Co. v. Am. Power Conversion Corp*., 46 F.3d 624, 626 (7th Cir. 1995) (The relevant distinction is between an order dismissing a complaint and an order dismissing the entire action.  The inquiry is not, as APC suggests, whether a dismissal is with prejudice or not. "[T]he simple dismissal of a complaint does not terminate the litigation. In contrast, a dismissal of the entire action ends the litigation." (quoting *Benjamin v. United States*, 833 F.3d 669, 671 (7th Cir. 1987))).

Consistent with this requirement, courts have recognized that permitting amendment of a complaint after dismissal under the first-to-file bar would undermine the bar's purpose.  A relator must file a new action after the first-filed action is no longer pending.  *See United States ex rel. Lujan v. Hughes Aircraft Co*., No. CIV-92-1282 SVW, 2000 WL 33775399, at *6 (C.D. Cal. Jan. 20, 2000) (dismissing "action" where related case was pending at time of filing of the case) *aff'd*, 243 F.3d 1181 (9th Cir. 2001); *see also United States. ex rel. Harris v. Dialysis Corp. of Am*., No.

CIV. JKB-09-2457, 2013 WL 5505400, at *5 (D. Md. Oct. 1, 2013) ("[t]he first-to-file bar does not stop a relator from filing a related case once the first case is no longer pending.").

This is the course that was followed in *Kellogg Brown & Root Services* itself.  In 2010, the district court dismissed the relator's case without prejudice because his prior case remained pending on appeal; the relator then filed a new action in 2011 after the appellate process terminated.  *United States ex rel. Carter v. Halliburton Co*., 19 F. Supp. 3d 655, 658 (E.D. Va. 2014); *see also Carter*, 710 F.3d at 183 ("However, if a case is brought while the original case is pending it must be dismissed 'rather than left on ice.'" (quoting *United States ex rel. Chovanec v. Apria Healthcare Grp., Inc*., 606 F.3d 361, 365 (7th Cir. 2010))).[23]

The same course should be followed here: dismissal of the *action* without prejudice. Relator recognized as much in his motion for clarification when he stated:  "Because *Verizon I* is no longer pending, Relator Shea contends that, unless this Court's Order of November 15, 2012 precludes it, he may file a new *action* against Verizon with the same allegations as *Verizon II*." Memorandum in Support of Motion to Clarify 5 (Dkt. No. 59-1) (emphasis added).

## CONCLUSION

For the foregoing reasons, this action should be dismissed with prejudice under the public disclosure bar or for failure to satisfy Rules 8 and 9(b).  If the Court rejects dismissal on those grounds, the action should be dismissed without prejudice under the first-to-file bar.

---

[23] Of course, the re-filing must wait until the prior case is truly no longer pending—that re-filed case was again dismissed in 2013 without prejudice under the first-to-file rule, and the relator unsuccessfully tried to file yet another new action while that case was pending Supreme Court review.  *United States ex rel. Carter v. Halliburton Co*., 19 F. Supp. 3d 655 (E.D. Va. 2014).

Dated:  July 31, 2015                    Respectfully submitted,

                                         /s/ Jonathan G. Cedarbaum

                                         ————————————————————

                                         Seth P. Waxman
                                         Jonathan G. Cedarbaum
                                         WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                         1875 Pennsylvania Avenue, N.W.
                                         Washington, D.C. 20006
                                         Tel.: (202) 663-6000
                                         Fax: (202) 663-6363
                                         jonathan.cedarbaum@wilmerhale.com

                                         *Attorneys for Defendants*